[Crim. No. 160. Fourth Appellate District.—March 14, 1934.]

THE PEOPLE, Respondent, v. TONY SEMIKOFF, Appellant.

374

George M. DeWolf for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of assault by means of force likely to produce great bodily injury, it being alleged that the assault was committed on one John Nedom by striking him with his fists and kicking him with his feet. He was found guilty by a jury and has appealed from the ensuing judgment and from an order denying his motion for a new trial.

The record shows that the appellant and Nedom had consumed considerable wine together throughout the day of October 8, 1933, at the home of Nedom on a ranch near Kerman, California. Some time after dark on the evening of that day the two went, in an old automobile belonging to the appellant, to the town of Kerman. Something happened to the lights on appellant's automobile and the two went to a garage operated by one William Schubin, for the purpose of getting some wire to fix the same. They found the garage closed and went to look for Schubin, finding him at a drug-store. There all three drank some beer and became so noisy that the proprietor of the store locked them

out. The appellant engaged in an argument with Schubin and seriously objected to the fact that he would not go back to his garage to get some wire with which to fix the appellant's lights. Thereafter, the three went to a pool-hall, where another argument and some more drinking took place, and the three became so noisy that the proprietor put them out. Somewhere around 10:30 P. M., Nedom requested Schubin to take him home in his automobile, which he did.

A few minutes after they arrived at Nedom's home, and while they were talking together, the appellant drove into the yard. He testified that he had a "hunch" as to where they had gone and followed them up. On arriving there he got out of his automobile and came over to Schubin and started talking to him about the wire and, as he testified, "the argument got hotter and hotter and I didn't see John Nedom, he was off to one side". Thereupon the appellant struck Schubin twice with his fist, hitting him on the mouth and on the eye, after which he apologized to Schubin for hitting him. As he was doing this Nedom came up, and there is a conflict as to what next occurred. Schubin testified that Nedom ordered the appellant to leave the place and not come back, and that the appellant whirled around and the two began to scuffle. The appellant testified that Nedom came up behind him, grabbed his arm and turned him around, that Nedom had a knife in his hand, and that he attempted to take the knife from him in order to save himself from bodily harm. Nedom testified that he had no knife, that the appellant hit him on the nose with a knife, that he started to run away, that the appellant grabbed him and began to hit him, and that he then became unconscious. Schubin testified that it was dark and that he did not see a knife in the hands of either of the combatants during the struggle, although after the fight the appellant showed him a knife which he said he had taken from Nedom and asked him what he should do with it. In any event, some sort of a fight took place between the two, during which the appellant struck Nedom at least three times, knocking him to the ground, and then kicked him three times. Nedom suffered severe injuries, was knocked unconscious and did not recover consciousness until some time the next day, and spent the next twelve days in a hospital. The doctor at the hospital testified: "I examined Mr. Nedom when he came

in and my diagnosis on admission was a fractured nose with severe laceration. His nose was cut wide open, from the tip to about an inch and a half along the mid-line and lay wide open. His whole face was markedly swollen; he had a swelling on both sides of the head, extending back almost to the mid-line on both sides. He had several scratches and lacerations about his face and left ear. He was conscious when he came in there. I thought he had a possible skull fracture in addition to his fractured nose; cerebral concussion.''

The appellant relies entirely upon a claim of self-defense. While his own story, if believed by the jury, would be sufficient to sustain that defense, there is ample evidence in the record to sustain the verdict reached, with its implied finding to the contrary.

The only point raised by the appellant is that the court erred in refusing to give two instructions requested by him. The first of these was one to the effect that if the defendant reasonably apprehended that Nedom would do him bodily harm he had the right to repel such assault ''with all the force he deemed necessary, and that he was not compelled to retreat from the said John Nedom . . . '' It is argued that this instruction should have been given because the element of standing one's ground and not being compelled to retreat, contained therein, was not covered in any other instruction. However, the instruction offered was erroneous in stating that in resisting he had the right to use any force he deemed necessary. The law is too well settled in this state to require the citation of authorities that the force that may be used under such circumstances is not such as a party may deem necessary but is such as is reasonable under the circumstances. The force that may be used is limited by whether reasonable grounds exist for believing it necessary, and the test is whether the force used would have been deemed necessary by a reasonable person in a similar situation. Since the instruction contained this erroneous statement of law, it was properly refused. (*People* v. *Davis,* 64 Cal. 440 [1 Pac. 889]; *People* v. *Metzler,* 21 Cal. App. 80 [130 Pac. 1192]; *People* v. *Lorraine,* 90 Cal. App. 317 [265 Pac. 893].)

The other instruction referred to reads as follows: ''You are instructed that if you believe that John Nedom

first attacked the defendant, and that in doing so he attacked the defendant with a deadly weapon, to wit, a butcher knife, then the complaining witness, John Nedom, was himself guilty of the felonious crime of an assault with a deadly weapon. And if you believe that such was the case, that the defendant was attacked with a deadly weapon, you are further instructed that the defendant in such a case, if at the time and under all the circumstances, reasonably believed that he was in great danger of injury or death, could defend himself even to the extent of killing his adversary if that extremity reasonably appeared to him to be necessary.''

It may be observed that this instruction does not state the law as clearly as it should in that it states that a defendant may act upon facts which appear to him to make his act reasonably necessary, while the law does not permit a defendant to so act unless his action would have appeared to a reasonable man to have been necessary. It is argued that the instruction should have been given because the appellant had a right to have the jury informed that if the complaining witness first attacked the defendant with a knife, he was himself guilty of a felony, and the appellant could then defend himself even to the extent of killing his adversary. It fully appeared in this case that the adversary was not killed and no authority is cited for the proposition that the jury must be informed that if the prosecuting witness first attacked the appellant with a knife he was himself guilty of a crime. The complaining witness was not on trial and all that was required was that the jury be informed as to the rights of the appellant if they believed that the complaining witness made the first attack, whether that attack was felonious or not. The essential principles were covered in the instructions given. The court gave nine instructions clearly and correctly setting forth the law of self-defense as the same might be applied under the facts disclosed by the evidence. The last two instructions thus given read as follows:

''The court instructs you that you must clearly understand that acts done in self defense alone are not assaults. One person cannot assault another in self defense; and any act done in self defense cannot be an assault. Therefore, if you find that the defendant was acting in defense of his

378

own person, as before described, then you will find him not guilty.

"The Court instructs you that if the defendant had reasonable grounds to believe, and in good faith believed, that his life was in danger, or that he was likely to suffer great bodily harm, he had a right to meet any attack that was made upon him, or which he had reasonable grounds to believe was being made upon him, in such a way and with such force as under all the circumstances he at the moment honestly believed and had reasonable grounds to believe was necessary to save his own life, or to protect himself from great bodily harm."

We think the instructions given were sufficient to fairly apprise the jury as to the law relating to the defense raised, and we find no error in the refusal to give the two instructions referred to.

The order and judgment appealed from are affirmed.

Marks, J., and Jennings, J., concurred.