[Crim. No. 1624.   Third Appellate District.—March 29, 1939.]

THE PEOPLE, Respondent, v. H. M. TENNANT, Appellant.

E. H. Zion and Harold L. Hjelm for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

ROSS, J., *pro tem.*—Appellant was convicted on three counts of an indictment, the first and third being for fraudulent appropriation of property by a public officer, and the second, for grand theft. This appeal is taken from the judgment of conviction and order denying a new trial.

Appellant was assessor and secretary of Oakdale Irrigation District. As such secretary, he did much of the actual work of carrying on the business of the district, the directors relying on him and ratifying his acts, deals and negotiations.

About June 15, 1936, appellant had a deal with one Clyde Boothe for the purchase by the latter of a piece of land belonging to the district. The directors had stated to appellant that they wanted at least $30 per acre for this land, and there had also been some discussion about reserving and selling separately a barn on the premises. Appellant asked Boothe a price of $35 per acre, and Boothe accepted. Then appellant told Boothe that the barn was to be reserved, and to avoid losing it, Boothe agreed to furnish materials sufficient to build a similar barn elsewhere. The deal was reported by appellant to the directors of the district, and a contract was made by them to sell the land to Boothe for $35 per acre, but nothing was told the directors about the materials to be furnished, and nothing was put in the contract about said matter. Later, at appellant's direction, lumber and corrugated iron was furnished on Boothe's order by certain dealers, and hauled to appellant's own ranch, and used in the construction of a barn thereon. There is some dispute as to whether Boothe knew, at the time of the deal, that the materials to be furnished by him were to be delivered to appellant personally or not.

Over a year later appellant called on Boothe and stated that some argument or ''mud-slinging'' had occurred about the deal, and wanted a written statement from Boothe showing the deal to have been regular. Boothe refused this, and learned for the first time, he testified, that appellant had not paid the district for the materials for the barn. Boothe

got in touch with the directors, and appeared at a public meeting of the board to make a statement about the deal. As he started to do so, appellant had a heart attack, but was revived, and Boothe made his statement.

The first count of the indictment charges appellant, as a public officer, with fraudulently appropriating the $921 worth of materials furnished by Boothe, a violation of section 504, Penal Code.

In June, 1935, appellant had had some correspondence with one E. K. Allison, who had a contract of purchase on 105 acres of land adjoining appellant's own ranch. Allison had paid $515 down on his land in August, 1934, and there were instalments due each August thereafter until the purchase price should be paid in full. Apparently Allison was willing to assign his interest for $300, and appellant wrote to him at Allison's home in Bellflower, California, stating that appellant would buy it if he could get a government loan to develop the land, and enclosing an assignment with directions to execute it and return it to an Oakdale bank for delivery to appellant on payment of $300. Allison executed the assignment and directed his wife to send it directly to appellant instead of to the bank, which was done. Apparently the assignment was made to appellant, his wife and son, as joint tenants, and was attached to the Allison contract by appellant.

According to Allison he heard nothing more about the $300 and in August, 1935, he stopped at Oakdale while on the way home from a vacation trip, and inquired of appellant about the deal, and was told by appellant that he, appellant, had been unable to get a government loan because the title to the property was not clear, and that the deal had therefore not been consummated. Allison called to get his papers from the Oakdale bank and found they were not there, but gave up the matter and went home. He testified: "I figured I was beat out of my $515.00, or ranch, whatever you may call it. Told them they could take it."

This deal with Allison is the basis of count two of the indictment for grand theft, the stealing of an interest in real property of the value of $300. Later, in October, 1936, one Andy Wells desired to purchase 73 acres out of the 105 Allison acres, and appellant secured a price of $45 per acre from

him, telling Wells that this was his individual piece of land. In collecting the purchase price appellant had Wells make two checks, one to the Oakdale Irrigation District for $1500.21, and one to the First National Bank of Oakdale for $1293.23. These checks made up the purchase price, less 5 per cent reduction for cash and a reduction for taxes. The check to the Oakdale bank was credited to appellant's account therein, except a portion which was applied on a note owned by him. The district received the other check, and the directors in due time, by resolution duly passed, conveyed the 73 acres to Wells. No payments of the instalments on Allison's contract had been made by anyone in either August, 1935, or August, 1936, and this payment of $1500.21 was the unpaid amount due on Allison's contract for the 73.11 acres covered. The appropriation by appellant of the $1293.23 paid by Wells is the basis for count three of the indictment, also under section 504, Penal Code.

Appellant contends that the evidence does not justify a conviction on any of the three counts. We hold that it is sufficient on each.

As to count one, appellant did receive the materials for a barn, as a public officer. The district was entitled to the whole consideration paid by Boothe for his parcel of land, either money or materials, and, although appellant had neither the right nor power to receive the materials, he did so, and was obligated by his trust to the district to deliver them to said district. His failure to do so was a fraudulent appropriation under section 504 of the Penal Code. Likewise, as to count three, the district was entitled to the whole consideration paid by Wells for his land, and when appellant received the benefit of the check for $1293.23 he was obligated under his trust as an official of the district to turn it in. Instead, he fraudulently appropriated it. The land belonged to the district; not to him. In spite of the assignment from Allison, the instalment payments had not been made, and he had no right to sell to Wells.

As to count two, it is apparent that appellant appropriated to his own use the interest in the 105 acres which Allison had. He got possession of the assignment, and secretly appropriated it, later deceiving Allison into believing

that he had not done so, that the latter might be discouraged and throw up the whole deal, as he actually did. There is no merit in the contention that because the assignment was to appellant, and to his wife and son, as joint tenants, the only value of the interest taken would be one-third of Allison's interest. The whole of Allison's interest was taken by appellant, and his sharing it with his wife and son does not make it less. The jury were fully instructed as to the limit necessary for a charge of grand theft, and impliedly found the value here to be more than $200, which is amply supported by the proof.

The day the trial of this action started a new jury panel was to be used, and the trial judge had directed its members to be present in court a half hour before the usual court time, at which time the trial was noticed to commence. The trial judge then gave the assembled veniremen a short summary of the general duties of jurors. The appellant was not present, although one of his counsel happened to be in the courtroom. This outline of duties by the trial judge, although unusual, is apparently within the inherent power of the court in controlling its proceedings. The court said: "This is not intended, nor shall it be considered by you as being an instruction in any case, but merely an outline of your duties for the purpose of assisting you in the discharge of your present office."

Included in the court's statement are the following passages, to which appellant objects:

"You will disregard all remarks or statements made by attorneys, or any other person unless made under oath, relative to the truth or falsity of any fact presented during the trial."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"I therefore, suggest that you pay strict attention to any such comments as may be made by the court, and adopt them insofar as possible to your views on the matters commented upon."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

Referring to the presumption of innocence, the court said it was "in the nature of a cloak of protection for persons charged with crime, and should abide with you throughout

the trial of a criminal case. You should not, however, be unduly influenced thereby''.

. . . . . . . . . . . . .

All of these statements were proper as parts of a general outline of jury duty. In the instant case a jury satisfactory to appellant was thereafter selected from this venire after exhaustive *voir dire* examination, and proper instructions on the law applicable to this action were given to that jury at the conclusion of the trial. No comment on the evidence was made by the trial judge herein.

Appellant made three objections to the selection of the jury. First, it appeared that the sheriff's return had mistakenly shown a personal service of the veniremen, and this was amended, by leave of court, to show service by registered mail. This was perfectly legal and proper. It was also proper to file the venire summons and sheriff's return thereon in the clerk's office. This was a return to the court.

Appellant complains also that the jury list from which this venire was drawn was not properly selected in that there were some disproportionate allotments of names to various precincts to the number of registered voters therein As said in *People* v. *Crossan,* 87 Cal. App. 5 [261 Pac. 531], the provision of section 206, Code of Civil Procedure that names of jury lists shall be selected from different wards or townships of counties in proportion to the number of inhabitants, as nearly as can be estimated, is directory only. In the instant case there is certainly no abuse of discretion shown on the part of the board of supervisors in selecting the lists, and appellant has no just cause of complaint, especially where a jury satisfactory to both parties was chosen from the particular venire.

It was not error for the court to excuse the jurors from the courtroom while trying the challenge to the panel. This matter was addressed to the court only, and the jury's presence was not necessary.

As to the grand jury which presented the indictment in the instant case, appellant complains that there appears to be no proper order on record listing the names of prospective grand jurors for 1937, and that therefore this grand jury lacked authority to act in any matter. Appellant states that the record shows only a sheet of paper in the clerk's

office reciting that such an order was made, and listing the names of those on the grand jury list for the year, but that it is not signed by either the court or clerk. There should be a court order under section 204, Code of Civil Procedure, in January of each year, designating the number of trial and grand jurors to be required, and listing the names of prospective grand jurors. Apparently, such order was made here, and if the minutes fail to show it, they could be corrected. The court had judicial knowledge of its own proceedings, and, apparently being convinced that the grand jury had been properly listed and drawn, properly denied the motion to set aside the indictment, as far as that ground was concerned. ■ Likewise, neither the indictment nor record of the grand jury need affirmatively show that biased members of the grand jury were asked to retire, or that at least twelve members voted for the indictment. The presenting of the indictment, endorsed as a true bill by its foreman to the court by the grand jury in its own presence, indicates the regularity of all the prior proceedings of that body in the matter.

■ The demurrer to the indictment was properly overruled. The facts stated in each count properly allege a public offense.

The verdicts of the jury show a finding that the appellant is guilty of each of the three offenses as alleged in the indictment. The fact that they omit a showing of the amount of money allegedly stolen or appropriated is not error.

■ The instructions given, which are complained of by appellant, were all proper. Several of them are general statements of the law concerning irrigation district affairs. That concerning the illegality of directors or officers being interested in contracts of the district was a proper statement for the jury's consideration, as the jury was warned in the following instruction that appellant was not being tried or charged under this law, and that they must not consider him as so charged. Some of the instructions may have been superfluous, but they were in no way prejudicial.

■ Appellant complains of the refusal to give a requested instruction embodying the language of section 1110, Penal Code, as applicable to count two of the indictment. The cases of *People* v. *Carter*, 121 Cal. App. 177 [21 Pac.

(2d) 129], and *People* v. *Curran,* 24 Cal. App. (2d) 673 [75 Pac. (2d) 1090], are authority for the proposition that in cases of grand theft involving the elements of obtaining money or property by false pretenses, the jury must be instructed as to section 1110, Penal Code, requiring corroboration of testimony. However, false pretenses are not an element herein. The appellant, by accepting the assignment by Allison, which he had no legal right to accept, took the interest in the real property, and his only false pretense was in later deceiving Allison into thinking that he had not taken the assignment, but that Allison still had an equity in land to which the title was not good, and on which he must keep up his instalment payments to protect it. In other words, this was not a case of obtaining the interest in the land by any false pretense, but of unlawfully appropriating said interest to his own use, secretly, and section 1110, Penal Code, does not apply.

The interests of appellant were zealously guarded throughout the trial of this case, and there appear to be no prejudicial errors. From a consideration of the whole case the court finds the convictions on each count of the indictment amply justified.

The judgment and order are affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1939. Langdon, J., voted for a hearing.