[Crim. No. 4856. In Bank. Sept. 29, 1948.]

THE PEOPLE, Respondent, v. ANTONIO LOPEZ,
Appellant.

William J. Currer, Jr., for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Defendant, having been convicted of assault with a deadly weapon, claims on this appeal that the verdict is not supported by the evidence, that the court did not correctly instruct on the law of self-defense, and that certain members of the jury were instructed in his absence.

On the evening in question defendant was drinking in a cafe in Los Angeles with Robert Fernandez, an unidentified man and two women. The entire party left the cafe, took a short ride in a taxicab, and then stopped near the place where they lived. Defendant, who was intoxicated, engaged in a fight with the unidentified man over the cab fare. Fernandez intervened, took a blackjack away from defendant, and stopped the fight. Defendant went to his home and a few minutes later reappeared with a loaded gun, walked up to Fernandez and said, "I am going to shoot you." One of the women, Fay Thomas, stepped in front of Fernandez and said to defendant, "You don't know what you are doing, put your gun away." Defendant started to back up and said, "Get away, Fay, I am going to shoot." She replied, "No, you are not, you had better go home and put that gun away," and moved toward defendant, with Fernandez following closely behind her. Defendant pushed her aside and shot Fernandez in his right knee, the bullet passing through his leg. Fernandez, who had not made any threats, was holding the blackjack at the time he was shot, but defendant did not see it.

The evidence is clearly sufficient to support the verdict. Defendant complains, however, that the court gave an erroneous instruction on the law of self-defense. The jury was told that if they believed that "without any overt act or physical demonstration upon the part of Robert Fernandez sufficient to warrant the defendant, as a reasonable man, in believing that he was in great bodily danger, he, the defend-

ant, fired a shot at said Robert Fernandez and hit him, such shooting under such circumstances was not justifiable."

Defendant criticizes the use of the word "great" in the instruction and argues that it unduly restricts his right of self-defense in a prosecution for assault with a deadly weapon. He concedes that similar instructions have been approved in homicide cases (see *People* v. *Emerson,* 130 Cal. 562, 568 [62 P. 1069] ; *People* v. *Holt,* 25 Cal.2d 59, 63 [153 P.2d 21] ), but urges that under a charge of assault with a deadly weapon probable danger of less degree than great bodily injury will justify the exercise of the right of self-defense. Although the distinction contended for by defendant appears to have been made in a few states, the great weight of authority is to the contrary and is in accord with the California decisions which have approved similar instructions in cases where the accused was charged with felonious assault. (See 114 A.L.R. 634-650 ; *People* v. *Lynch,* 101 Cal. 229, 231 [35 P. 860] ; *People* v. *Romero,* 143 Cal. 458, 459 [77 P. 163] ; *People* v. *Guidice,* 73 Cal. 226, 228 [15 P. 44] ; *People* v. *Corlett,* 67 Cal.App.2d 33, 46 [153 P.2d 595, 964] ; *People* v. *Moody,* 62 Cal.App.2d 18, 22-23 [143 P.2d 978] ; *People* v. *Semikoff,* 137 Cal.App. 373, 376-377 [30 P.2d 560] ; *People* v. *Washburn,* 54 Cal.App. 124, 128 [201 P. 335].)

The defendant also complains that the court failed to instruct the jury fully on the law of self-defense. The instructions were in some respects incomplete, but in view of the overwhelming evidence of defendant's guilt it does not appear that the failure to give more complete instructions resulted in a miscarriage of justice. (See Cal. Const., art. VI, § 4½.)

The principal ground urged by defendant for reversal is that some of the jurors were instructed in his absence. He relies on the fact that, when prospective jurors were being impaneled several months before the trial, they were given a pamphlet entitled "General Instructions" which is set forth as an appendix to this opinion. The propriety of using such a pamphlet has not been passed upon in this state (cf., *People* v. *Cowan,* 44 Cal.App.2d 155, 160-161 [112 P.2d 62] ), but it has been held, in an analogous situation, that no prejudice resulted from giving prospective jurors general oral instructions as to their duties prior to the commencement of the trial of a particular case. (*People* v. *Tennant,* 32 Cal.App. 2d 1, 7 [88 P.2d 937].) The practice of giving booklets of

general instructions to jurors at the time of their selection for jury duty has been approved in at least one state (*Knight* v. *State*, 50 Ariz. 108 [69 P.2d 569]), and is being used, apparently with approval, in other jurisdictions. (See *State* v. *Cooney*, 23 Wn.2d 539 [161 P.2d 442]; [1925] 11 A.B.A. Jour., 289, 401 [N.Y.]; [1928] 14 A.B.A.Jour. 410 [Kan.]; [1947] 22 N.Y.U.L.Q. 442 [Federal District Courts]; [1946] 41 Ill.L.Rev. 187 [Ill.].)

The pamphlet used in the present case is designed, as its title indicates, to give jurors some conception of legal procedure and of the responsibilities attached to jury service. The first portion of the pamphlet is devoted mainly to an explanation of the steps leading up to actual trial, and the remainder consists of the statement of rules to be found in the codes or in the judicial declarations of the appellate courts of this state, together with admonitions and sound advice as to the proper conduct of jurors. Substantially all of the material is so general in nature as to be helpful to jurors in any kind of a criminal trial.

Even a cursory reading of these "general instructions" shows that they are not, and should not be considered to be, the instructions which the codes require to be given to the jury at the close of a trial. (See Pen. Code, §§ 1093, 1126, 1127; Code Civ. Proc., §§ 607a, 608, 609.) The pamphlet was not intended to take the place of the required instructions but to give the jurors background and general information concerning their duties and responsibilities; and it is expressly stated, in at least two places in the pamphlet, that the jury must follow the law as declared by the trial court's instructions. Under the circumstances there was no violation of defendant's right to be present at all stages of the trial and to have the jury instructed in his presence. (Const., art. I, § 13.) That constitutional guaranty is satisfied where, as here, the trial judge, in the presence of the defendant, instructs the jury as to the problems of his individual case. The Constitution does not contemplate keeping prospective jurors in a state of ignorance about matters of general information and concern to them, and neither the letter nor the spirit of the Constitution prohibits the giving of general, preliminary information which will make them better able to perform their duties in deciding cases.

An enlightened administration of justice requires the intelligent service of well-informed men and women, and there

is obviously considerable value in acquainting jurors in advance of trial with a few elementary principles of law and procedure, and with the serious duties and responsibilities they are about to assume. It is immaterial whether they derive their knowledge from prior service as jurors in other cases or from the study of such a pamphlet. In either event, wholesome and helpful advice of the type · found in this pamphlet should be of great assistance in securing to defendant a fair and impartial trial.

There is no claim that any portion of the pamphlet is erroneous as a matter of law or is in conflict with the instructions given by the trial court, and we find nothing which could have been prejudicial to defendant. Although some of the statements were not applicable to this prosecution, it does not appear how they could have misled the jury or harmed the defendant, and it must be assumed that the jurors followed the specific instructions given at the close of the trial.

The judgment and order denying a new trial are affirmed.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

### APPENDIX:

#### GENERAL INSTRUCTIONS

concerning the duties and responsibilities of trial jurors in the criminal departments of the Superior Court of Los Angeles County, California.

##### Read and Study Them Carefully

You have been summoned to serve as a trial juror in the criminal departments of the Superior Court of Los Angeles County for a limited period of time. The right of trial by jury is guaranteed by both the federal and state Constitutions and is one of the basic principles of liberty and representative government. While jury service may entail some personal and financial inconvenience to you, it is a duty and privilege which, if conscientiously performed, is a mark of good citizenship.

Jury service has its compensation in the fact that the experience necessarily offers an opportunity for a more intimate knowledge of the manner in which our courts function, and the orderly method under legal procedure by which justice is sought to be administered. Many of you will see a side of life with which you have never come in contact and it is bound to leave with you a fuller understanding of the complexity of the problems with which the courts have to deal.

Upon being selected as a juror you become an integral part of the judicial system, provided by law, in the conduct and trial of cases involving the rights of citizens and of the state. Your responsibility is great for the reason that to you is assigned the duty of rendering a decision upon the facts in the case. You are the judges of the facts, while to the court is assigned the duty of being the judge of the law in the case.

The judge has the duty of ruling upon all questions of law throughout the trial and of giving you instructions indicating to you how the principles of law involved shall be applied by you to the facts in the case. Upon the proper exercise of these coordinating functions depends a fair and impartial trial and the ultimate rendition of a fair and impartial verdict—a verdict that shall speak the truth as nearly as it is humanly possible to do so.

Therefore, with this in mind and in order that you may have some conception of our legal procedure, and of the responsibilities attached to your service as a juror, this pamphlet has been prepared and is handed to you for your careful perusal. Read it over several times in your leisure moments because the extent of your understanding of its contents will determine in a large measure your value and success as a juror.

The cases which are tried by juries may be divided into two classes: civil cases and criminal cases. A civil case is one in which one person sues another to enforce a private right or to collect money or to recover damages for a violation of a private right. Criminal cases include all cases where a law has been violated and such violation is punishable under the law by the death penalty, imprisonment in the state prison or jail or by fine.

Civil cases are begun and prosecuted by the private party who feels that he has been wronged. In criminal cases it is the theory of the law that the commission of the crime is a wrong against the state and therefore a criminal case is prosecuted in the name of the People of the State of California against the defendant. The person injured by the crime is not a party to the prosecution and his sole connection with the case is that of a witness. The person accused of the crime is known as the defendant. You have been summoned as trial jurors in criminal cases only and for the purposes of these instructions you may be concerned only with that type of case.

Criminal cases in the superior court are begun there by filing either an indictment or an information. So far as you are concerned there is little difference in practical effect between them. Each is a charge in writing setting forth briefly the crime or crimes of which the defendant is accused. There is a difference, however, in the procedure under which they are issued. An indictment comes from the grand jury of the county which has met and heard evidence, as a result of which, 12 or more of such grand jurors believing the evidence so heard by them to be strong enough to justify criminal prosecution have voted to return an indictment which is then filed in the superior court. Where the prosecution is by information it is begun by filing a complaint before a magistrate, usually a judge of the municipal court or a justice of the peace. Before the case reaches the superior court a preliminary hearing is held, at which the witnesses against the defendant give their testimony under oath and may be cross-examined by the defendant or his lawyers. The defendant may also testify in his own behalf and may put such witnesses upon the stand to testify as he may desire. If after all the witnesses have been heard the magistrate believes that a crime triable in the superior court has been committed and that there is probable cause to believe the defendant guilty he makes an order holding the defendant for trial in the superior court. The district attorney then prepares and files the information charging the crime or crimes shown by the evidence at the preliminary examination.

Both in the case of the hearing before the grand jury and before a magistrate a shorthand reporter is required by law to be present and this reporter takes down the testimony and then writes it out on the typewriter and a copy of such testimony is filed with the superior court and a copy is also given to the defendant. These preliminary steps are in no sense evidence and must not be considered by the jury as any proof of guilt or innocence. They are merely a means whereby the case reaches

the superior court and it is only on the trial thereof that the question of the defendant's guilt or innocence is determined.

## The Trial

A jury trial begins with the selection of 12 jurors. The district attorney or one or more of his deputies represent the People in the prosecution of the case and the defendant is represented by any attorney whom he chooses to retain or by the public defender. The attorneys on both sides have the right of asking such questions of each juror as serve to satisfy them that the juror's mind is free and clear from all interest, bias or prejudice that might prevent his finding a just and true verdict. Each side is given under the law certain challenges to the jurors if he desires to exercise them. Challenges are of two kinds: For cause and peremptory. Challenges for cause are set forth by statute, an example of which is that the prospective juror might be related to the defendant in the action or might have at some time been employed by him. Peremptory challenges are those for which no cause need be stated, each side being given a certain number of such challenges by law. A challenge to a juror should never be taken personally as in any way reflecting upon him or his impartiality or ability to try the case. There may be a variety of reasons in the minds of the attorneys for both sides with which the juror need not be concerned. When the juror is accepted by both sides he is sworn to try the case fairly and impartially and a true verdict rendered according to the evidence received and the law as given by the court. The indictment or information is then read to the jury by the clerk, together with a statement of the plea of not guilty entered by the defendant. The district attorney then opens the case for the prosecution. In some cases he makes an opening statement of what he expects the evidence will prove, and at the beginning of the defendant's part of the case his counsel also has the privilege of making an opening statement of what the defense expects to prove, such statements being only explanatory and are never to be regarded or considered as evidence in the case.

In criminal cases the defendant at the outset of the case is presumed to be innocent. This presumption continues throughout the trial and will prevail unless after hearing and considering all the evidence worthy of belief the jury is convinced beyond all reasonable doubt of the guilt of the accused. If the evidence considered as a whole leaves in the mind of a juror a reasonable doubt, that is, a doubt for which there is a reason arising either from the evidence or lack of evidence of the guilt of the accused the juror should vote ''not guilty.'' However, the law does not require proof to an absolute certainty before it becomes a juror's duty to vote for a verdict of guilty. The law only requires that guilt shall be proved to a moral certainty; that the degree of proof shall be sufficient to convince an unprejudiced mind of the guilt of the accused beyond all reasonable doubt.

## Direct and Circumstantial Evidence

The guilt or innocence of the accused, or any incidental fact, may be proved either by direct or by circumstantial evidence. Direct evidence is proof of a fact by the testimony of a witness who knows of the fact of his own knowledge and who as an eyewitness is able to give a complete statement as to the existence or nonexistence of the fact desired to be proved. All other evidence is circumstantial evidence and consists of proof of a series of facts or circumstances, which when considered together, prove or disprove an ultimate matter of fact. The term ''circumstantial evidence'' does not mean proof of a circumstance which leads merely to a suspicion. Circumstantial evidence is evidence or proof of a fact which when considered with the evidence of other facts leads to a conclusion as to the fact it is desired to prove. If a shot were heard

coming from a closed room and upon rushing in people discovered a man fatally shot and another standing by his side holding in his hand the revolver from which the fatal shot was fired, such facts would not be direct evidence that the man holding the gun had shot the other. It would be strong circumstantial evidence. The conclusion that the man holding the gun had fired the fatal shot could only justly be reached when all of the circumstances taken together would warrant such a conclusion. In considering whether direct or circumstantial evidence has the greater weight we must bear in mind that the direct testimony of an alleged eyewitness may be the result of a mistake or poor observation or may be intentionally false, while the likelihood of mistake or falsification may be less where to constitute a complete chain of circumstantial evidence the testimony of each witness to one of the facts making up that chain must fit with all of the other facts testified to by the other witnesses and going to make up that chain. In other words, it is less likely that a number of witnesses could get together and each falsify or by mistake tell a story which makes a consistent entirety than for one alleged eyewitness to tell a story which would appear to be true.

## Credibility of Witnesses

Every witness is presumed to speak the truth. This presumption may be overcome by his manner of testifying, his interest in the case, if any, or his bias or prejudice, the character of his testimony, his reputation for truthfulness, the reasonableness of his testimony, his prior conviction of a felony or by the fact that on other occasions he has made statements contradictory to his testimony at the trial. There are other factors which a jury should take into consideration in determining the extent to which they will accept a witness' testimony. Among these is the degree of the witness' intelligence, his opportunity of knowing the facts to which he testifies, his physical ability to see, hear and observe and his accuracy of observation, the accuracy of his memory, and his general attitude while testifying.

## Defects of Honest Witnesses

The jury must be careful however not to misinterpret the conduct of a witness. Thus it must not be assumed that the nervousness of a witness is necessarily due to his telling that which is not true. A nervous condition is possibly due to the fact that he is experiencing the normal reaction incidental to most witnesses when placed upon the stand in a court room. Neither does the mere fact that a witness has contradicted himself necessarily mean that he is not entirely honest. He may have misspoken or he may have misunderstood the question. Memories are not perfect. The recollection of any one of us as to a past event may become hazy or inaccurate. Also our powers of observation are not perfect. When an accident occurs or a crime is committed the eyewitness rarely sees more than 10 per cent of all that is observable. We best observe that which attracts our interest, and as the interest of various eyewitnesses is likely to be different so we may expect that they may observe different things. Then again the witness' observation may be impaired by a defect of sight, hearing or one of the other senses. We must not be too critical in considering testimony as to time, distance, etc., for we know how inaccurate we are in making such estimates. Differences in experience or education, calmness or excitement, anger, resentment and other emotions and instincts may and often do play a large part in affecting the observation, memory, and subsequent testimony of a witness.

## Impeachment of Witnesses

A witness is said to be impeached when there appears in the evidence the basis for a reason to discount the testimony of such witness. One common impeachment is contradictory evidence shedding doubt upon

the testimony of the witness. A witness may also be impeached by evidence that he has been convicted of a felony, that is, of a state prison offense. This does not mean that merely because a witness has been convicted of a felony he is not worthy of belief. It is for the jury to decide in the light of the testimony of the witness and the facts of such conviction just how much weight will be given to his testimony. A witness may also be impeached by evidence that on some former occasion he has made a statement differing from the testimony given at the trial as to some matter material to the case on trial. A witness thus impeached is allowed by law to explain apparent inconsistencies in his statements and testimony and such explanation should be taken into consideration in weighing the testimony given at the trial.

### Declaration of the Accused

The law permits evidence of statements made by the accused outside of court where such statements have a tendency toward proving his guilt. Such statements are ordinarily called admissions but when the statement is of such character that standing by itself it shows the guilt of the accused then the statement is known as a confession. In the case of confessions the law provides that they may be received in evidence only when they are first shown to have been made freely and voluntarily. Even when a confession has been given in evidence and is later proved to have been made involuntarily it must be disregarded and cannot be considered by the jury.

### Objections by Counsel—What Is Not Evidence

Contrary to a somewhat popular idea the objections made by the attorneys during the trial of a case are not for the purpose of obstructing the proceedings. The trial of cases is governed by rules of law and the purpose of objections is to call to the attention of the trial judge that there has been or is about to be a violation of one of those rules. If the judge agrees with the point thus called to his attention he sustains the objection, otherwise it is overruled. The judge may himself of his own motion exclude improper evidence. If evidence is given which turns out to be improper because it violates some rule of law such evidence is often stricken out of the record by the order of the court. Whenever evidence is so stricken out it ceases to have any legal or other effect and that evidence so stricken must be entirely disregarded by the jury and cannot be considered for any purpose. Statements made by the attorneys and questions asked which are not permitted to be answered are also no part of the case and must not be considered nor can any inference be drawn therefrom. In brief, the conclusion of the jury as to the facts can lawfully be based only on the sworn testimony which is given before them and the exhibits received in evidence.

### The Law of the Case

Since the verdict of a jury must be in accordance with the law some provision had to be made to inform the jury of the law applicable to the case. The duty of declaring the law and deciding on questions of law rests with the judge. The law in the form of the court's instructions is given to the jury after all of the evidence is in and the arguments of lawyers concluded. Under their oaths the jury must accept without question and must follow the law as declared by the judge. If a juror has an idea that the law is different than as stated by the judge or if he has a belief that the law should be otherwise, such ideas and beliefs must be entirely disregarded. The trial of a criminal case is a complete whole depending upon its being handled in accordance with the law. If the law is not followed the entire plan of criminal procedure is disrupted and injustice necessarily follows.

## Penalties—Influences

Under the law the jury determines the penalty or place of imprisonment in only three instances: first degree murder, kidnapping and statutory rape. The decision of the jury as to the penalty in these particular cases is final. The judge in imposing sentence can neither increase nor reduce the penalty from that fixed by the jury.

In all cases other than those just enumerated the jury has nothing whatever to do with the penalty which may be inflicted if the defendant is found guilty. The subject of penalty or punishment should not be mentioned or considered in the deliberations of the jury. Upon a verdict of guilty never add thereon any recommendation for either leniency or severity so far as sentence by the court may be concerned. The questions of penalty, leniency and probation are solely for the decision of the trial judge. Under no circumstances may a juror permit his judgment and verdict to be influenced by pity, passion or by what seems to be the public opinion. There are, and naturally will be, cases in which the evidence before the jury may give the impression that though the accused has violated the law the circumstances are so mitigating in character that little apparent reason for punishment exists. The juror may be tempted in such a case to favor an acquittal as a means of relieving the accused from punishment. Jurors should, however, put aside all such ideas. In the first place if the evidence of guilt is satisfactory the verdict should in accordance with law and the juror's oath be one of guilty, leaving to the judge the question of leniency. A verdict of guilty does not necessarily mean a term of imprisonment in the state prison but may in some cases result in a county jail sentence, a fine, or proceedings under the provisions of the probation law. Neither should a jury convict because, although the evidence of the crime charged is not sufficiently convincing, the evidence discloses other reasons why punishment is advisable. Not only is the judge better fitted by his experience to pass more justly on the matters of leniency, probation, and sentence, but at that time the judge has the benefit of much information as to outside facts which must necessarily be considered in justly passing upon the subject of penalty, such as past history, environment and former criminal record, if there be any. The jury does not have this information before it and without such data might be unduly severe, and on the other hand might exercise undue leniency in favor of one whose past record would not merit any such consideration.

Jurors should always remember that they are the judges of the facts and that their duty is properly performed only when the verdict represents a just and accurate conclusion drawn from the facts regardless of what the later effect of the verdict may be.

## Deliberating on the Verdict

In criminal cases the verdict must be unanimous. Each juror must concur in the verdict. Unless all agree upon the same verdict there is a mistrial. The time, effort and money spent upon the trial has produced no conclusions and there must be another trial to decide the case. In the proper administration of the law cases should be decided and jurors should agree upon a verdict if they can conscientiously do so. There may now and then be a case in which there is fair room for a difference of opinion but in the vast majority of cases differences of opinion are more likely to be the result of a misunderstanding of the facts or the instructions of the court on the law, or a lack of appreciation of the significance of some piece of evidence. Differences of opinion by the jurors, being usually due to honest misunderstanding, may ordinarily become reconciled so that there is an agreement of the jurors if each juror will conscientiously try to agree. If the jurors will fairly argue and state their opinions in the jury room and listen to the argu-

ments of their fellows a calm and fair consideration and discussion will almost always result in an agreement of the jury providing the law as declared in the instructions of the court is followed.

To aid in securing such a consideration a few suggestions may be of value. It is well to avoid any emphatic expression of opinions and conclusions until there has been a full and frank discussion of the evidence, for it is but natural that a person thus expressing himself is more or less hesitant in changing such expressed views. Again, jurors should not indulge in a discussion or enter into controversies over immaterial facts and circumstances which cannot affect the decision of the case one way or the other. It will be found advisable to begin the discussion by ascertaining those facts which are admitted or undisputed and as to which all will agree before discussing facts regarding which a difference of opinion may exist. Where there is a material difference in the testimony of various witnesses it is worth while to consider the possible explanation or reason for such differences, always remembering the factors which tend to cause a difference in the testimony of honest witnesses. It may be well to again point out the importance of carefully following the evidence as it is received in court, bearing in mind that what appears at the time to be a comparatively unimportant piece of evidence may in the end prove to be of most vital importance.

### Privileges of Jurors

A juror may with the permission of the court question a witness, but his questions are subject to the same objections and are governed by the same rules of law as are the questions of the attorneys. Jurors should refrain from asking any questions until attorneys for both sides have completed their examination of the witness, because in all probability the question which the juror has in mind will be asked of the witness before his testimony is concluded. If the question is not asked and the juror then feels it to be material he should ask leave of court to propound the question. If the juror desires, and this is often advisable, he may make written notes and memoranda during the taking of testimony and the same may be used by him during the deliberations of the jury in the jury room as a means of refreshing his memory. If during the deliberations of the jury a difference of recollection exists as to the testimony of any witness or witnesses the judge at the request of the jury will have it returned into court and the testimony under discussion will be read to it. The law does not permit the jury to take the official transcript of the testimony into the jury room. If a difference of opinion arises as to the interpretation of court's instructions or if further instructions are required to make the law more clear the jury, upon request, may be returned into court where the judge will give further instructions as to the law.

It is the law that the jury may consider only such evidence as is received in open court. It is not only highly improper for a juror to look up evidence or to visit any place mentioned in the evidence for the purpose of gaining information, but such misconduct may result in a mistrial or compel a retrial of the case. Should the jury during the course of the trial consider it necessary that they be given an opportunity to inspect some place mentioned in the evidence they should inform the trial judge of such desire and in his discretion he may arrange for the jurors to view the place in the regular manner provided by law. Similarly it is improper for any juror to conduct tests or experiments out of court and if such are necessary the court will arrange that they be properly made. If it should happen that a juror is in possession of evidence which he believes should be considered by the jury he can not lawfully give this information to his fellow jurors or even consider it in arriving at his own conclusions unless this is done in the manner

provided by law. The proper method is to inform the judge of the fact and the juror will then be allowed to give his testimony from the witness stand the same as any other witness.

### Conversing About the Case

Until the case is finally submitted to the jury and it has retired to deliberate upon a verdict the members thereof are prohibited by law from conversing among themselves or with any other person upon any matter, no matter how trivial, relating to the case. It is further their duty not to form or express any opinion as to any issue or fact or the merits of the case until the case is finally submitted to them. Should any person in the hearing of any juror make any statement regarding a case on which a juror is serving, the juror should do whatever is in his power to avoid hearing such a statement. This may be done by informing the person that a member of the jury is present and that such conduct is contrary to law. If any person should persist in such conduct there is strong reason to believe that he is intentionally trying to influence the juror and the matter should be immediately reported to the trial judge or to an officer of the law if one is available. Jurors should avoid conversation with strangers in and about the court room or court house. As illustrative of this fact an incident recently occurred in one of our criminal courts wherein a juror was approached in a general conversation in the hallway outside the court room by a stranger. The incident was properly reported to the trial judge and subsequent investigation disclosed the stranger to be an employee of one of the defendants on trial. You can readily imagine the embarrassment which this situation caused not only the juror involved but all parties concerned in the case. Jurors should not converse on any subject with any of the attorneys in the case or with any of the witnesses or persons who may be witnesses. While it is not unlawful for a juror to talk with one of the lawyers or witnesses about something which has absolutely nothing to do with the case, if a juror is seen in such a conversation he is immediately subject to the suspicion that he is talking about the case on trial and can immediately expect that the incident will be called to the attention of the judge and that he will be subjected to the natural embarrassment of an investigation by the court. Jurors should always so conduct themselves that no suspicion of any impropriety can ever arise.

Another matter may properly be called to your attention which on its face seems trivial but which causes a great deal of inconvenience, time and unnecessary expense. It sometimes occurs that one or more jurors will deliberately hold up the rendition of a verdict for the petty and unworthy cause of securing a free lunch or dinner at the expense of someone else. This causes the judge, court attachés and interested parties a loss of time and patience, and such pettiness is unworthy of anyone entrusted with the real responsibility of a trial juror.

Do not be late at the opening of court in the morning or upon its reconvening after a recess. Your tardiness causes an unnecessary expense to the county and to the litigants as well as embarrassment to yourself. Do not by exclamation, facial expression or otherwise give any indication of how you are affected by any testimony or exhibits in the case. Your reactions are your own until you reach the jury room when they may be shared with your fellow jurors.

No parking accommodations are provided for jurors and automobiles driven by jurors should be parked in a safe place in order that they may be properly cared for in the event of the jury being locked up after hours or overnight. Possibly a word by you to the parking lot attendant will cover this situation for you.

A juror's family is supposed to anticipate that the juror during the normal course of service may be on occasions locked up overnight. Under

these circumstances the court attachés will try to notify your family for you if they can be reached by telephone.

*Conclusion*

The verdict of a juror should in every case result in a just determination; just not only to the defendant or to the People but just to both sides. Such a determination is more certain to be reached if the decision be based solely upon the law and the facts regardless of what the effect may be, always remembering that the function of the jury is solely that of deciding what the facts of· the case are and applying to these facts the law as given in the court's instructions.

In all his acts, conduct and decisions each member of the jury must ever be mindful that he is acting as a representative of his fellow citizens and as such is charged by them and his oath with deciding all cases in accordance with the facts and the laws which have been laid down by those citizens for their protection. There are two sides to every controversy and you should not make up your mind until all parties to the case have presented their evidence and you have heard the arguments of counsel and have heard the instructions of the court. When jury duty is thus performed no just criticism can be directed at any verdict which the jury may return.

CARTER, J.—I dissent.

I cannot agree that it is proper to approve the giving to the jury, prior to the time the case is tried, a mass of instructions such as those contained in the appendix to the majority opinion. It is virtually impossible in the time available, to examine and arrive at an intelligent conclusion as to the correctness of the long and detailed sheaf of instructions here involved. There may be many situations and conditions that would arise in various cases which cannot now be foreseen that would render some of the instructions highly improper. To arrive at a fair appraisal of all those instructions would require a lengthy study of the particular wording of the instructions and the cases to which they might be applicable. There may well flow from these instructions, implications which are contrary to law by reason of the failure to mention certain qualifying factors which may exist in some cases. In the time available I do point out the following questionable features in the instructions which were submitted to the jury in this case.

(1) On page 678, *supra,* in the appendix to the majority opinion it is said that ''Criminal cases include all cases *where a law has been violated.*'' That clearly gives the impression that if the case is a criminal one *a law has been violated,* the very issue to be determined at the trial, or to state it another way, that the mere charge of a criminal law violation imports that one has occurred.

(2) On the same page of the appendix it is said: "Civil cases are begun and prosecuted by the private party who feels that he has been *wronged*. In criminal cases it is the theory of the law that the commission of the crime is a wrong against the state and therefore a criminal case is prosecuted in the name of the People of the State of California against the defendant. *The person injured by the crime is not a party to the prosecution and his sole connection with the case is that of a witness.*" That clearly implies that the complaining witness in a criminal case has not been wronged and therefore he is a wholly impartial and disinterested witness —the same as any witness who has no ax to grind. Such is plainly not true. No place will a person find more biased and vindictive attitudes than are displayed by a complaining witness in a criminal trial.

(3) Further on page 678, great stress is laid upon the finding by a grand jury or a magistrate at a preliminary hearing as showing that they believed defendant had committed the crime. While it is said at the bottom of page 678 that that is no proof of guilt, yet the jury is definitely given the impression that either a magistrate or a grand jury has in effect found guilt. From that the jury naturally infers, contrary to the presumption of innocence, that defendant is presumably guilty. That is especially dangerous when we recognize the well known tendency to assume that merely because someone has been charged with a crime there must be some merit in the charge—that where there is smoke there is fire. How the case got to the stage where it is ready for trial is wholly immaterial.

(4) On page 679, in the appendix, in giving an example of when challenges of jurors for cause is proper, the only mention is of a case where the prosecution may make the challenge.

(5) On page 680 it is said: "In other words, it is less likely that a number of witnesses could get together and each falsify or by mistake tell a story which makes a consistent entirety than for one alleged eyewitness to tell a story that would appear to be true.", which in effect states that circumstantial evidence carries more weight than direct evidence. That is not the law. (10 Cal.Jur. 1157-8; 8 Cal.Jur. 191.)

(6) It is stated on page 680 that an eyewitness to an accident rarely sees more than 10 per cent of that which is observable. Where is the scientific or statistical data to support that statement? It might well lead the jury to discount an eye-

witness' account by 90 per cent, resulting in very little consideration being given to his testimony.

(7) In discussing "impeachment" of a witness on pages 680 and 681, it fails to include *all* the methods of impeachment although on its face it purports to be comprehensive. This may lead the juror to reject other forms of impeachment.

(8) It is said also on page 681, that the law permits proof of statements of the defendant made out of court as evidence against him. The jurors might infer that statements purportedly made by defendant and reported in a newspaper could be used. The "outside of court" feature would loom as the important factor in his mind.

(9) It is said on page 681 that statements made by attorneys are not part of the case. Certainly such statements are a part of the case when made in argument to the jury.

(10) In discussing the subject of "Deliberating on the Verdict" (p. 682), stress is laid on the necessity of arriving at a verdict to save the state money. The whole tenor of the discussion would impel jurors to compromise their convictions and go with the majority. Moreover telling the jury how they shall conduct themselves while deliberating (pp. 682 and 683) (how they shall present their views and the like of their fellow jurors) is wholly improper. It would tend to make them act in an unnatural manner and destroy the traditionally lay aspects of a true jury trial. Their deliberations are secret and how they are conducted is their own business.

To the foregoing observations undoubtedly many more could be added upon a closer scrutiny. Suffice it to say it is not the province of this court to pass upon, *in advance of any controversy,* the validity of a whole series of jury instructions in a criminal case.

Finally it should be observed that the instructions are not, as appears from the foregoing discussion, and a reading thereof, mere general advice to jurors. They go into detail on many questions of the value of various kinds of evidence and the like.

It should be remembered that the instructions here involved are given jurors in pamphlet form by an attaché of the court, and that a conscientious juror would undoubtedly read and study the same with the view of attaining the qualifications which he deems essential to the performance of jury duty in a manner acceptable to the court in which he is serving. Because these instructions are placed in the possession of

jurors so that they have access to them while they are not actually performing jury duty, they have an opportunity to become more conversant with them than with the specific instructions read by the court to the jury at the conclusion of the trial. It may be assumed, therefore, that the instructions contained in the appendix of the majority opinion will have greater influence upon the average juror than any other instructions read by the court to the jury during the trial. Such being the case, if the so-called pamphlet instructions are misleading and would tend to give the juror an erroneous concept of the law, they are more apt to have a prejudicial effect than the instructions read by the court to the jury during the trial.

In my opinion it was error to permit the jury in the case at bar to have access to the instructions contained in the appendix to the majority opinion, and for this error I would reverse the judgment.

Appellant's petition for a rehearing was denied October 28, 1948. Carter, J., voted for a rehearing.