[Crim. No. 808.   Fourth Dist.   Sept. 23, 1949.]

THE PEOPLE, Respondent, v. REBEL B. CORNETT, Appellant.

J. M. Lopes for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged with the murder of Fred Weaver Cole, the stepfather of his divorced wife. A jury found him guilty of murder in the first degree without recommendation as to penalty and on appeal the judgment imposing

the death penalty was reversed. (*People* v. *Cornett*, 33 Cal. 2d 1 [198 P.2d 877].)

Defendant was again tried and a jury found him guilty of murder in the second degree, recommending leniency. A motion for a new trial was denied and defendant appeals from the judgment of conviction and from the order denying a new trial.

## FACTS

On the day of the homicide, September 28, 1947, defendant and his divorced wife, Pauline Cornett, were living with their seven children in a one-room cabin at a labor camp at Woodlake. Defendant left the cabin at about 11 a. m. and returned in the afternoon as Mrs. Cornett was preparing supper. He said he had been looking for a job and she told him it looked like he had been drinking instead of looking for a job. Defendant then called Mrs. Cornett a "bitch" and stated that he was going to get her, "that dirty dog Fred Cole," her mother and the "whole bunch." When Mrs. Cornett saw that defendant was going towards his bed where he kept a Japanese Luger gun under the pillow she left the house and saw him get in his car and drive away. Mrs. Cornett and the seven children were then taken by a neighbor to the house of the decedent in Exeter some 11 miles distant. On their arrival at the house in Exeter, decedent and Mrs. Cornett held a conversation, following which, the children, except one daughter, were sent upstairs. The decedent procured two pistols which he put in his belt under his shirt. He then went to the front door and was sitting in a chair on the porch when, a few minutes later, the defendant drove up in his car. There was some conversation between the two men on the porch during which the defendant asked if Mrs. Cornett was there and on receiving a negative reply, he said: "Mom, come out. You know you are in trouble." Mrs. Cornett was then leaving through the rear door. She went to a neighbor's house and remained there until she heard a shot coming from the upstairs room of her stepfather's house. As Mrs. Cornett went out through the back door of her stepfather's house, the two men came into the house and proceeded toward the stairs. The defendant was a step or two in front of deceased and in this order they went up the stairs. As they reached the head of the stairs defendant said: "You better draw. This is your last chance." Defendant then asked where his wife was and decedent said he didn't know. Decedent made no move to draw his gun and

had nothing in his hands when defendant walked over to a screen in the room, looked behind it, immediately whirled around and from the hip shot deceased who at that time was standing sidewise to him, about 4 feet away. The decedent caught himself on a chair. Defendant then said: "I am going to Visalia and give up." The decedent said, "I will go with you." Defendant replied, "No, you are not," and approaching him, fired a second shot into his stomach. Decedent fell to the floor. Defendant stepped over to decedent, pushed him over with his foot, took the guns which were inside decedent's shirt and left the house.

The police were called and found decedent lying on the floor. He was still alive and was removed to a hospital where he died within a few minutes from hemorrhage caused by the bullet wounds.

Defendant was apprehended late in the same afternoon near the cabin at Woodlake and at the time had a gun in his right hand which proved to be one of the guns taken from decedent. Defendant was searched by the officers and the Luger pistol was found inside his shirt. It had two shells in the clip, and had been fired.

Defendant was placed in the officer's car and while he was being taken to Visalia he asked the chief of police how Mr. Cole was and was told by the chief that Mr. Cole was still alive when he left town but probably had now passed away. Defendant then said, "Good, I been wanting to do this for a long time." Defendant testified in his own behalf and admitted the shooting, contending, however, that he shot in self-defense and that he had not quarreled with his wife nor made any threats against her or the decedent.

The evidence was amply sufficient to support the verdict of murder in the second degree, and the sufficiency of the evidence in that respect is not here questioned. Defendant contends that the court erred in its ruling on the admissibility of the evidence and that the error was prejudicial to defendant and resulted in a miscarriage of justice and that the court erred in its instructions to the jury.

In support of his first contention defendant quotes certain excerpts from the record but he does not specifically set forth any claimed errors and does not support his contention by argument or citation of appropriate authority. Under such circumstances we are not called upon to consider the points so presented. (*People* v. *Black,* 45 Cal.App.2d 87, 98

[113 P.2d 746].) However, we have examined the excerpts set forth and find there was no error in permitting the district attorney to cross-examine a witness as to previous statements made by her not in the presence of defendant. (Code Civ. Proc., § 2052.) Nor was there error in striking from the record testimony of this same witness as to what she had told her mother. Where the witness admitted on direct examination that she had testified falsely at the former trial, there was no error in permitting cross-examination as to such fact. (Code Civ. Proc., § 2048.)

■ Defendant next contends that the court erred in its instructions to the jury. The first instruction complained of is a part of a lengthy instruction defining murder and manslaughter. The portion to which objection is made reads as follows:

"In determining the intention of the defendant at the time of the transaction complained of, it is important to consider the means used to accomplish the killing. The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots, nor lunatics, nor affected with insanity.

"A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own voluntary acts. Therefore when one person assails another violently with a dangerous weapon, likely to kill, and which does in fact destroy the life of the party assailed, the natural presumption is that such assailant intended death, or other great bodily harm, *and in the absence of evidence to the contrary this presumption must prevail.*

"The willful use of a deadly weapon without excuse or provocation, in such a manner as to imperil life, generally indicates a felonious intent."

Defendant contends that through the use of the italicized words, the instruction had a tendency to mislead the jury and give the impression that the burden of proof of self-defense would shift to the defendant.

The portion of the instruction complained of deals only with the presumption to the effect that a person intends the ordinary, natural and probable consequences of his voluntary act and was a correct statement of the law. (Code Civ. Proc., § 1963, par. 3; *People* v. *Besold,* 154 Cal. 363, 368, 369 [97 P. 871].)

■ Defendant complains of the following instruction:

"The Court further instructs the jury that to 'justify the assault with a deadly weapon of another in self-defense, it must appear to the person using the deadly weapon, as a reasonable person, that the danger, if any, was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm, the assault with the deadly weapon of the other was necessary. And it must appear, that the person so assaulted was the assailant, or, if not the assailant, that the person using the deadly weapon had really and in good faith endeavored to decline further trouble before using the deadly weapon.' "

The contention is that the use of the words "urgent and pressing" has the same meaning as "absolutely necessary" and the case of *People* v. *Carmichael,* 198 Cal. 534 [246 P. 62], is cited as authority. That case does not support defendant's contention. In the instruction in that case, the words "urgent and pressing" were used in the same connection as here and were not criticized in any way. The court recommended that the word "absolutely" be eliminated as it might have the effect of leading jurors to believe that to bring it within the right of self-defense, the act of killing must have been actually necessary.

In the former appeal in the instant case, *People* v. *Cornett, supra,* the use of the term "absolutely necessary" in the instruction was condemned but no criticism was made as to the use of the words "urgent and pressing." We do not think that the jury was misled by the instruction here given. The court gave full and adequate instructions to the jury on the law of self-defense and the word "absolutely" was not used.

■ Without citing authority or indicating wherein it states the law incorrectly, or how it has a tendency to mislead the jury, defendant complains that the following instruction does not state the law and had a tendency to mislead the jury under the facts of this case. The instruction is that—"The right of self-defense is not available to a person who has sought a quarrel with the design to force a deadly issue and thus through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault, for in such a case the original intent would control." The instruction was properly given. (*People* v. *Hinshaw,* 194 Cal. 1, 26 [227 P. 156].)

■ Again without citing authority to sustain his contention defendant claims that another instruction likewise had a

tendency to mislead the jury and did not correctly state the law. The instruction follows: ''Whenever an assault is brought upon a person by his own procurement, or under an appearance of hostility which he himself creates, with a view of having his adversary act upon it, and he so acts and is assaulted with a deadly weapon, the plea of self-defense under the circumstances is unavailing.'' No error appears in the giving of this instruction under the circumstances presented by the record in this case. (*People* v. *Albori*, 97 Cal.App. 537, 541 [275 P. 1017].)

We have read the many instructions given and when they are considered in their entirety it appears that the jury was fully and fairly advised as to the quality and degree of proof necessary before the defendant could be convicted. That is all the law requires. (*People* v. *Rubio*, 75 Cal.App.2d 697, 710 [171 P.2d 737].)

The evidence of defendant's guilt as disclosed by the record is overwhelming. It does not appear that the errors complained of were prejudicial to the rights of defendant or resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½; *People* v. *Lopez*, 32 Cal.2d 673, 675 [197 P.2d 757].)

The judgment and order are affirmed.

Griffin, Acting P. J., concurred.