[Crim. No. 7074. Second Dist., Div. Two. June 21, 1960.]

THE PEOPLE, Respondent, v. ANDREW JACKSON BLACKSHEAR, Appellant.

Claude Vibart Worrell for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant was convicted by a jury of a violation of Penal Code, section 245, assault with a deadly weapon. He appeals from the judgment and from the order denying his motion for a new trial.

It is not disputed that on the night of May 21, 1959, appellant, using a high-powered rifle, shot and seriously wounded the complaining witness, one Buffington. However, in support of his primary contention that the jury's verdict is not supported by the evidence, appellant argues that Buffington was the aggressor in the physical encounter that preceded the shooting, and that appellant acted justifiably in self-defense and in defense of his home.

For reasons which will shortly appear, it is unnecessary to narrate here all of the mass of conflicting testimony concerning the circumstances leading up to the violent encounter between appellant and Buffington which culminated in the shooting. ▮▮ In our recital, we take cognizance of the familiar rule that we must view the evidence in the light most favorable to the verdict and judgment.

It appears that on the occasion in question Buffington went to appellant's residence on East 47th Street in Los Angeles looking for a girl friend with whom he had quarreled earlier in the evening. Evidently she had gone to appellant's home in fear that Buffington intended to do her physical harm. Appellant went to the front door of the apartment and informed Buffington that the woman would not see him. An argument developed while the two men stood opposite each other in the doorway.

According to appellant's version, Buffington then forced his way into the apartment. According to Buffington's version, he was involuntarily drawn into the apartment when he grappled with appellant after the latter had made a movement as if to draw a knife. In the course of a violent struggle in the living room of appellant's apartment, Buffington suffered a knife wound in the chest and a cut on his hand. The com-

batants disengaged momentarily and appellant went to a bedroom closet and procured a rifle. Buffington testified that when it "dawned" on him that appellant had a rifle, he immediately ran from the apartment. Appellant followed in pursuit and while Buffington was running and "turning to his left to go between a private residence and an apartment house" appellant aimed and fired. Buffington fell seriously wounded. The distance between Buffington and appellant at the time the shot was fired was estimated at 50 feet or more.

A police officer who arrived on the scene shortly after the shooting testified as follows concerning appellant's statement at that time: "Mr. Blackshear stated that Buffington had come over to the house that night and he wanted to see Merle and that Blackshear had told him that Merle didn't want to see him, but that Buffington had put his foot in the door and had come on in the house and had hit Blackshear a few times in the stomach with his fist, and then Blackshear stated that he reached on the coffee table and picked up a small knife and hit at Buffington a few times with this knife, and then that Buffington had gone on past Blackshear to the bathroom in which Merle had locked herself and had pushed the door down. Blackshear stated when Buffington did this, he went to his bedroom, to the closet, and got a .3240—I believe he said—Craig deer rifle and had come back into the front room, and at this time Buffington was running, and that Blackshear had followed him outside and had shot him, fired one time, and he stated that he believed that he had hit him because Buffington had fell. Then I asked Blackshear if he had to lead him in order to hit him, and he stated 'a little bit.' ''

Appellant testified that after Buffington had threatened to kill him he ran to the closet to get his rifle and that ". . . somehow I got my rifle out . . . I pointed the rifle at him, and he broke and turned around and run out, and I was running out behind him. . . . So, I was going to run him completely out of my house and out of the neighborhood, if I could, but when I got to the front door, somehow I tripped and the gun went off, and I didn't know he was hit.''

The foregoing summary discloses enough of the evidence to demonstrate its sufficiency to support the verdict. Even if it be assumed that the jury accepted appellant's version of the affray down to the point when Buffington ran from the apartment, the reasonableness of their finding against the claim of justifiable self-defense is manifest.

An elementary principle in the law of self-defense is

that no more force may be used than reasonably appears to be necessary under the circumstances presented. (5 Cal.Jur.2d 234, *et seq.*) The test of reasonableness is whether the force used would have been deemed necessary by a reasonable person in a similar situation. (*People* v. *Semikoff,* 137 Cal.App. 373, 376 [30 P.2d 560].)

In the present case it is difficult to perceive how an intelligent jury could have found the appearance of reasonable necessity for this shooting from any point of view. By his own testimony appellant confirmed his knowledge that his adversary was in full flight when he fired, and, of course, the jury was not bound to believe appellant's statement to the effect that his gun went off accidentally as a result of his tripping.

Appellant complains of a ruling which struck from the record a volunteered statement that he had been told that Buffington had once beaten a girl unconscious. Even if it be assumed that the statement was admissible as bearing upon appellant's state of mind, the ruling cannot be regarded as prejudicial in the context of the instant record. (Cal. Const., art. VI, § 4½; *People* v. *Chavez,* 50 Cal.2d 778, 792 [329 P.2d 907].) It appears that appellant was given considerable latitude in proving that he feared Buffington and believed that Buffington intended to visit injury upon the girl friend who had taken refuge in his apartment.

We have examined appellant's other assignments of error and have concluded that they are without merit.

Affirmed.

Fox, P. J., and Ashburn, J., concurred.