(No. 30507.
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH W. SCHOOS, JR., Plaintiff in Error.

*Opinion filed March 18, 1948.*

Francis T. McCurrie, and John M. Branion, both of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, of Springfield, and William J. Tuohy, State's Attorney, of Chicago, (John T. Gallagher, Melvin S. Rembe, and W. S. Miroslawski, all of Chicago, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

The defendant, Joseph W. Schoos, Jr., was indicted in the criminal court of Cook County for armed robbery and robbery. He pleaded not guilty. Evidence was heard, and a jury found him guilty of armed robbery. Motions for a new trial and in arrest of judgment were overruled, and defendant was sentenced to imprisonment in the penitentiary for a term of not less than one year and not more

than one year and one day. Defendant prosecutes this writ of error.

The decisive issue presented by this writ of error is the propriety of action of the trial judge in distributing to prospective jurors a pamphlet described as a "Jury Primer," prepared by himself, "to instruct citizens who are going to serve as jurors in the general principles of law and court procedure, to better acquaint them with the process of the administration of justice," and of the court's remarks to the jurors from time to time relative to the pamphlet. Defendant's assignment of errors charges that the trial judge erred in (1) having jurors drawn for his court the day before the trial in the case at bar and addressing them orally before they were called to serve in this case to the extent his remarks related to the jury primer; (2) distributing the pamphlet to the prospective jurors to be taken with them to their homes to be read and studied by them for the purpose of familiarizing themselves with its contents so they would be better qualified to render a fair and impartial verdict in whatever case they should be called; (3) addressing the jurors orally after they had read and studied the pamphlet, (4) and indoctrinating the jurors before they were called for service. Appropriate objections, including a challenge to the array, in the criminal court, have properly preserved for review the actions of the trial court. Defendant claims that as a result of the errors asserted, he has been deprived of due process of law in contravention of constitutional guaranties. The questions presented are of paramount importance and require a detailed narration of the proceedings in the criminal court.

June 27, 1947, the cause was assigned to one of the judges of the criminal court for trial. On the day named, the trial judge distributed copies of the pamphlet, consisting of twelve printed pages, to the prospective jurors. In his prefatory remarks, he explained the general purpose

of the jury primer, observing, "Nothing that I am going to say to you is intended, in any way, to apply to any particular case or to any particular set of facts or to any particular defendant or defendants. No principle of law that I am going to discuss with you now, is intended, in any way to be applicable to any case in which you might be called upon to serve as jurors. Each case has its own facts, which the jury must pass upon, to the exclusion of everything else. You are to consider only the testimony which is given to you from the witness stand. The law that is given to you by the judge presiding in any case, is the only law that you should consider in its application to the facts in such case." He commented upon the solemn function of jurors in our system of government and explained briefly the separation of powers among the legislative, executive and judicial branches of our Federal and State governments, adding that both constitutions insure for each defendant charged with crime, "the right to have twelve jurors pass upon his guilt or innocence, and there are principles of law prescribed in connection with that vital function." The trial judge proceeded with a statement concerning the nature of the opening statements made by the attorneys in criminal cases, pointing out they are lawyers who represent both the State and the defendants. The jurors were requested to read and study the pamphlets which the trial judge then gave to them. They were admonished to familiarize themselves with the contents of the primer, as "I may want to interrogate you on the principles and propositions contained therein." The prospective jurors took the pamphlets home, it may be assumed, for the purpose of reading and studying them, as directed.

The following day, June 28, the court addressed the jurors, inquiring whether they had read and studied the pamphlet. Each of the jurors present in the courtroom on June 28, when the case was called for trial, had read and studied the pamphlet and listened to the court's dis-

course. The "Jury Primer" opens with a preface and is followed by subdivisions captioned, "Right to Trial by Jury." "Who is the Defendant?" "Who is the Complainant?" "The Issue in the Case." "The State's Attorney." "What Is an Indictment?" "Qualifying a Jury." "Opening Statements." "The State's Proof." "The Defendant's Proof." "Objections." "Rebuttal Testimony." "Final Arguments." "Instructions of Law." "Jury's Verdict." "Outside Influences." "Functions of the Judge." "Deliberation by Jury." "Beyond a Reasonable Doubt." "Sympathy or Prejudice." "Credibility of Witnesses." "An Accessory." "An Accomplice." "An Alibi." "A Confession." "Circumstantial Evidence." "Distinction between Civil and Criminal Cases" and, in conclusion, "A Faithful Juror." Reference and comments can be made only to several provisions without unduly extending this opinion. The primer, or "The Jury Problem," as it appears in 41 Illinois Law Review 187, opens with the statement, "The purpose of this pamphlet is to acquaint prospective jurors in criminal cases in Illinois courts with a few of the elementary principles of trial and procedure in which they are about to participate and with the duties and responsibilities which they are about to assume."

There are many contradictory statements,—statements which perhaps might not be misleading to a lawyer but would most assuredly be misleading to a layman. Under the caption, "Who is the Complainant?" the primer says, "The People of the State of Illinois are the real complainants in all criminal cases, and not the individual who claims to have been robbed, attacked or otherwise injured. * * * But crimes are committed against all the people of the State and all the people are vitally interested in the enforcement of law and order, and in the protection of life, liberty and property." It is true, of course, that criminal cases in this State are captioned, "The People of the State of Illinois v. [the named defendant]" but it is not entirely

correct to say that the People are the real complainants. As defendant points out, it is perhaps better to say that the People are the "arbiters, umpires, the judges—to see the accused gets a fair and impartial trial." It is the duty of the prosecuting officers, as representatives of all the People of the State, not merely to endeavor to obtain convictions in criminal cases but, if the evidence so warrants, to see that a person unjustly accused of crime is absolved from the stigma of a conviction and discharged from custody.

The paragraph entitled, "The State's Attorney," reads: "The State's Attorney and his assistants represent the People of the State of Illinois in the prosecution of all criminal cases. The police generally get the complaints and make the arrests. Police officials, crime detection laboratories and other agencies investigate and gather the evidence; the State's Attorney analyzes and presents the evidence at the trial. The jury passes upon the sufficiency of the evidence. The judge instructs the jury as to the law. To insure an orderly society for the safety, comfort, happiness and well being of all the people, it is essential to maintain these law enforcing agencies and to co-ordinate and harmonize their efforts for our common good." A prospective juror reading the quoted statement could well infer that the duty devolves upon him, in so far as humanly possible, to aid the State's Attorney and his assistants, police officers, crime detection laboratories and other investigative agencies to promote the well-being of the People of the State by returning verdicts of guilty in criminal cases. He may reasonably construe the quotation as an invitation to become a partner with the prosecutors and law-enforcing agencies generally.

In "Qualifying a Jury," this language appears, "The purpose of the questioning of prospective jurors by the prosecuting attorney and defense counsel is to ascertain their fairness and their competence to pass upon the guilt

or innocence of the defendant." A basic principle of the common law is that an accused is presumed innocent until he has been proved guilty. It is elemental that the prosecution must, in the first instance, prove the charge in the indictment and, unless this be done, no duty rests upon the defendant to even attempt to establish his innocence. Again, under "The State's Proof," we observe this statement, "Unless his guilt is first so established by the State, the defendant is not required to deny the charge, nor even establish his innocence." The words, "nor even establish his innocence," are highly prejudicial to persons accused of crime. A better statement would be that, unless the State first establishes the guilt of an accused, he is entitled to have the trial judge direct the jury to return a verdict of "not guilty" and to be discharged.

Under "The Defendant's Proof," the primer asserts, "His [the defendant's] credibility is to be judged by the same tests as the testimony of other witnesses, and the jury may take into consideration the fact that he is interested in the outcome of the trial. If he does not testify, that fact must not be held against him." No reason suggests itself for attaching special significance to the fact that the defendant is naturally interested in the outcome of the trial. The question of his failure or refusal to testify is in noway associated with his interest in the outcome of the proceedings.

The paragraph dealing with "Objections" merits particular mention. It reads, in part, "Each lawyer may object to certain questions, or to certain answers or to certain procedure, if he believes them to be improper for any legal reason. When the judge sustains the objection it means that he agrees with the lawyer making that particular objection, and if he overrules the objection it means he disagrees." If it happens, as it often does, that the trial judge must overrule many objections interposed by the attorney for the defense, jurors who have been indoc-

trinated with the "Jury Primer" might reasonably reach the conclusion that the trial judge favored the prosecution since he sustained so many of its objections. It is true, in sustaining an objection, the judge necessarily agrees with the attorney making the particular· objection that, as a matter of law, the attorney is right. A layman reading the quoted statement might, however, decide that frequent concurrence with the attorney indicated the trial judge favored one side of the case as against the other.

In the extended discussion captioned, "Deliberation by Jury," the jurors are told, "They must not consider incidents related to other and different facts and circumstances. For instance, one juror refused to believe any policeman merely because his brother was once picked up on suspicion by the police and was subsequently released; yet many police officers are reputable and truthful men." The illustration is not an apt one. The presumption obtains that all police officers· are reputable and truthful men, not merely that many possess these virtues. Moreover, jurors are not precluded from considering evidence in the light of their intelligence, common knowledge and the experience of mankind. *People* v. *Schaffner,* 382 Ill. 266.

In the paragraph, "Beyond a Reasonable Doubt," reference is made to the fact that, in trials in criminal cases, such heavy stress is placed upon finding a defendant guilty beyond reasonable doubt as to tend at times to confuse honest and fair-minded jurors. Instructions on reasonable doubt are often assailed upon review and the propriety of giving these instructions has received the consideration of this court in numerous cases. In *People* v. *Flynn,* 378 Ill. 351, a challenged instruction defined reasonable doubt. Observing that the instruction should not have been given, we said, "This court has frequently announced that an instruction should not attempt to define a reasonable doubt, as it is difficult in the extreme to find a more explicit definition of the term than the words themselves." See:

*People* v. *Casey,* 350 Ill. 522; *People* v. *Rogers,* 324 Ill. 224; *People* v. *Johnson,* 317 Ill. 430.

In the discussion relative to "Credibility of Witnesses," this statement appears, "If jurors believe from the evidence that any witness has wilfully and corruptly testified falsely to any material fact in issue, then they have the right to disregard all of the testimony of such witness, except insofar as his testimony has been corroborated by other credible evidence." The use of the words, "to any material fact in issue," renders this statement highly confusing. The quoted words would render an instruction of this character objectionable since an explanation must be made to the jury as to what facts are material. Distinction must be made between facts which are material and constitute a necessary element of a crime and those which are not so material and necessary. (*People* v. *Hoffman,* 399 Ill. 57; *People* v. *Arcabascio,* 395 Ill. 487; *People* v. *Wells,* 380 Ill. 347; *People* v. *Cramer,* 298 Ill. 509.) It might well be that a witness may be impeached on immaterial facts and that the jurors believe the witness has been impeached, instead, upon material facts.

The paragraphs dealing with "An Accomplice" and "An Alibi" cover highly controversial matters and, even if technically correct, might better be omitted in a jury primer. The same observation applies with like force to the two paragraphs dealing with "A Confession." Here, the prospective jurors are not told that, in determining as a preliminary question whether a confession by a defendant is admissible, the trial judge is not required to be convinced, beyond a reasonable doubt, of its voluntary character. See: *People* v. *Borrelli,* 392 Ill. 481.

We are of the opinion that the use of the "Jury Primer" in this case and the remarks of the trial judge at the time he presented copies of the primer to prospective jurors and, again, on the day of the trial, constituted reversible error. Stated briefly, the trial judge gave oral instructions

to the jury and the jurors were indoctrinated prior to being called for service. Section 5 of article II of the constitution of this State guarantees that "The right of trial by jury as heretofore enjoyed, shall remain inviolate." The object of the constitutional provision guaranteeing the right to a jury trial is to preserve the substance of the right rather than to describe the details or the methods by which it shall be exercised and enjoyed. In short, the provision in our constitution means that all substantial incidents and consequences which pertain to the right of trial by jury at common law and its essential features, as known to the common law, must be preserved and its benefits secured to all entitled to the right. (*People* v. *Kelly,* 347 Ill. 221.) The essential requirements of a trial by jury at common law and preserved by the constitution are that there must be twelve impartial and qualified jurors, selected in the manner required by law, who shall unanimously decide the facts in controversy under the direction and superintendence of a judge. (*Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609.) The constitutional provision is not so inelastic, on the other hand, as to render unchangeable every characteristic and detail of the common-law system. There is no pretense in the case at bar, however, that the prospective jurors, at common law, were indoctrinated, as here, nor that any pamphlet or document resembling the Jury Primer was given them in advance of their service. It does not follow that a pamphlet in the nature of the jury primer used in this case cannot be prepared and employed under any circumstances.

Section 2 of the statute prescribing the qualifications of jurors provides that, in Cook County, the persons to serve as petit jurors shall be selected by the jury commissioners, as provided by law. Jurors in all counties, the statute ordains, must have the legal qualifications described, a proportionate number shall be chosen from the residents of each town and precinct, and only such persons shall be

selected as are, "First—Inhabitants of the town or precinct, not exempt from serving on juries. Second—Of the age of twenty-one (21) years or upwards. Third—In the possession of their natural faculties and not infirm or decrepit. Fourth—Free from all legal exceptions, of fair character, of approved integrity, of sound judgment, well informed, and who understand the English language." (Ill. Rev. Stat. 1947, chap. 78, par. 2.) These qualifications are made by the legislative branch of our State government. If insufficient for the purpose, or if major change be deemed necessary, the desired changes should be enacted by the General Assembly. The criminal court of Cook County is without power to add new qualifications. If prospective jurors are to be obtained by means of a jury primer, or otherwise, or indoctrinated generally in the substantive rules of criminal law and procedure to the end of rendering them better equipped to participate in the high function of administration of justice, the task is legislative and not judicial. This opinion is not to be construed, however, as in any way indicating or even intimating a viewpoint upon the constitutional validity of legislation empowering trial judges to train or indoctrinate prospective jurors by means of a jury primer.

By distributing the jury primer to jurors prior to service in a particular case and, as in the present case, directing them to study the jury primer, the trial judge was, in reality, establishing a new method for the selection of jurors, a method certainly unknown at the common law and without any statutory basis in the laws of this State. The functions of a *nisi prius* judge in this State may perhaps be unduly restricted but the fact remains that they are limited. He cannot comment upon the evidence (*People* v. *Kelly,* 347 Ill. 221,) and, under section 67 of the Civil Practice Act, (Ill. Rev. Stat. 1947, chap. 110, par. 191,) the jury may be instructed only as to the law and the instructions must be in writing. (*People* v. *Callopy,*

358 Ill. 11.) The remarks of the trial judge were, for all practical purposes, oral instructions.

Practical difficulties attending the practice assailed in the present case cannot be ignored. If one trial judge in the criminal court of Cook County may use a jury primer under the conditions described, other judges may do likewise. Exclusive of Cook County, the State is divided into seventeen judicial circuits and each circuit has three judges. If the practice presented in this case be approved, there is nothing to prevent each of the fifty-one circuit court judges outside of Cook County from preparing and using their own jury primers. Fifty-one different jury primers, in addition to jury primers prepared and used by each of the circuit and superior court judges in Cook County, not to mention the chief justice and thirty-six judges of the municipal court of Chicago, would not only create confusion but would inevitably produce chaos in the administration of the criminal law in this State.

The People reply that a juror is not disqualified for jury service merely because he has acquired information concerning a juror's duty, responsibility, trial procedure, or a general or special knowledge of law prior to being called on his *voir dire* examination, even though this knowledge is acquired through the instrumentality of the trial judge, as here. The statement does not accurately describe the record made in the case at bar. We are of the opinion that a juror is disqualified for jury service where he is required to submit himself to a course of special study in order to familiarize himself with the contents of a jury primer of a character of the challenged pamphlet before us. The remarks of the able trial judge in addressing the jurors at the time of giving them copies of the jury primer and the pamphlet itself represent a laudable effort and reflect great zeal in an attempt to improve the caliber of jurors serving in the criminal court of Cook County. Too much, however, has been attempted. In particular, the

paragraphs dealing with instructions relative to reasonable doubt, credibility of witnesses, accessories, accomplices, alibis and confessions destroy the generally noncontroversial paragraphs dealing with the description and nature of a criminal case, indictments, order of proof, opening statements, objections and final arguments. In short, if the administration of the criminal law will be improved by using a jury primer for the purpose of carrying out the legislative command to choose "well informed" jurors, the material included should not be of a controversial character and, conversely, should be not only noncontroversial but easily assimilated and, so far as humanly possible, free from any question with respect to its factual and legal accuracy.

The jury system, as it obtained at common law, with but few and relatively immaterial modifications, over a long period of time,—not merely for many years but through the centuries,—has proved the most effective instrument yet devised to attain substantial justice in the trial of criminal cases. Far-reaching changes of an institution which has served so admirably and so long should not be made lightly. True, the jury system is not perfect, but no perfect system to replace it has been suggested. If changes are to be made, extreme care should be exercised to make certain that the modifications proposed will actually result in marked improvement in the functioning of the jury system rather than tend to impair its present effectiveness.

In *People* v. *Tennant*, 88 Pac. 2d 937, the trial judge outlined the duties of the jurors to a jury panel but did not, so far as the court's opinion discloses, give them a jury primer or pamphlet of any kind. Although a "Juror's Manual" was distributed by the jury commissioners to members of the jury in *People* v. *Short*, Appellate Department, Superior Court of Los Angeles, No. CR.A. 2148, the information contained, according to the Appellate De-

partment of the trial court, was similar to the oral directions or instructions given in *People* v. *Tennant*. Reliance is also placed upon the short statement of the Court of Criminal Appeals of Texas, in *Blackshear* v. *State*, 72 S.W. 2d 601, "By bill of exception No. 1 the appellant complains of the action of the trial court in lecturing the jury panel for the week and also the special veniremen that were drawn in this case as to their duties. We have carefully examined the bill of exceptions, but fail to find any remark made by the trial judge which could in any way have injured the appellant." Assuredly, the foregoing quotation affords little, if any, authority, persuasive or otherwise, for the actions assailed in the present case. No one of the authorities cited is a decision of a court of last resort and all present different facts situations from the extraordinary factual situation in this case.

The judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*