**In The Matter of Raymond BUSH.**

**No. 1655.**

Municipal Court of Appeals for the District of Columbia.

Argued July 6, 1955.

Decided Aug. 4, 1955.

Joseph Levin, Washington, D. C., for appellant.

Hubert B. Pair, Asst. Corp. Counsel, with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, Milton D. Korman, Asst. Corp. Counsel, and Harry L. Walker, Asst. Corp. Counsel, all of Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Raymond Bush, aged sixteen, was charged in the Juvenile Court with the offense of assault with intent to rob. A jury returned a verdict of "involvement in the offense" and this appeal followed.

Defendant's counsel says he was improperly excluded from the courtroom during the "selection and indoctrination" of the panel of veniremen from which the jury for the trial of this case was selected. Because the record as first brought before us did not sufficiently reveal what had happened in that phase of the proceedings, we ordered, and the trial court has certified to us, a supplemental record supplying that information. We are now in a position to judge the situation more accurately. Appellant's counsel says that he demanded the right to be present because he was apprehensive that the judge was (a) improperly instructing the veniremen and (b) selecting the members of the panel in an arbitrary manner. The record reveals that neither of these things happened.

■ As to the first proposition it recites that in the preliminary talk to the panel of 75 veniremen the judge outlined for them the nature and importance of jury service, and then put to them a series of questions as to their citizenship, residence, and age; and also as to whether any of them were in certain professions or occupations, and then proceeded, in the manner we later describe, to select a panel of 29 jurors for service at the court term then commencing. All that the judge said to the veniremen was proper and in accordance with routine statements given in all courts to acquaint prospective jurors with the nature of their functions. The judge said nothing of which any defendant could offer the slightest criticism.

Appellant cites two cases in which instructions given to prospective jurors in advance of trial and out of the presence of counsel were held erroneous. People v. Schoos, 399 Ill. 527, 78 N.E.2d 245, 2 A.L.R. 2d 1096; People v. Weatherford, Cal.App., 160 P.2d 210, reversed on other grounds

27 Cal.2d 401, 164 P.2d 753. In both of those cases there were detailed instructions (in printed form) as to a number of legal questions which might arise in specific cases. These the reviewing courts found in large part erroneous or improper. Such is not the situation here, where as we have said the judge told the jury nothing improper, and indeed gave them no instructions on any question of law.

As to the actual selection of jurors, the record recites that after excusing certain veniremen the judge, and then the clerk, shuffled the cards of the remaining jurors, and that the clerk then called the first twenty-nine names appearing on the cards as jurors for the term then commencing. In this method of selection there was nothing arbitrary or otherwise improper, and there is no suggestion that it produced a panel of jurors who were other than completely impartial.

■ Though it is clear that no error was committed in this instance, we agree with appellant that counsel should not be excluded from the courtroom during the preliminary examination of or instructions to prospective jurors. Counsel are entitled to hear all that a judge says to such a panel; otherwise there would be no way, except by investigation or by accident, for them to know what the panel was told. The presence of counsel will minimize if not completely avoid any reason for apprehension of irregularity. On this subject generally, see: People v. Weatherford, supra; People v. Schoos, supra; 2 A.L.R. 2d 1104–1107; Gadsden v. United States of America, D.C.Cir.1955, 223 F.2d 627; Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853; 53 Am.Jur., Trial, § 25; 23 C.J.S., Criminal Law, § 974.

Appellant contends that the court erred in admitting certain hospital records. The complaining witness, Marvin T. Ayers, had testified that appellant (and a companion) grabbed and attempted to hold him, that he broke away and began to run, but they caught up with him, and he was struck in the face. After reporting the incident to the police, and after appellant and his com-

panion were apprehended, Ayers went to Casualty Hospital. He was told to return the following day 'for examination, and x-rays were then taken. It was found that he had a broken nose which required him to remain in the hospital for three days.

■ The record librarian at Casualty Hospital testified that in connection with her duties she had custody of hospital medical records. She produced records showing treatment received by Marvin T. Ayers at Casualty Hospital on February 13, 1955, the day after the assault. The records showed that Marvin Ayers was admitted for a fracture of the nose and that he was released on February 16, 1955, three days after his admission, as testified by Ayers himself. The witness said she was not present at the time of the patient's admission, or when the x-rays were taken, or when his history was taken, or when the entries were made on the medical records.

Appellant argues that the records did not meet the requirements of the Federal Shop Book Rule, 28 U.S.C. § 1732, as set out in New York Life Insurance Company v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297, 300. There an insured was found dead at the foot of a stairwell in a hospital, and the question was whether it was suicide or an accident. Hospital records containing diagnostical reports were held inadmissible because they contained "complicated medical and psychiatric diagnoses." This case is patently different. The report here involved was routine in nature, reciting merely the name of the patient, dates of admission and discharge, and the injury for which he was treated. The records clearly met the requirements of the Shop Book rule, as set out in the Taylor case, supra, and elsewhere. See Norwood v. Great American Indemnity Co., 3 Cir., 146 F.2d 797; Bartkoski v. Pittsburgh & Lake Erie R. Co., 3 Cir., 172 F.2d 1007. Moreover, the records were essentially cumulative, since they recited dates and happenings as to which complaining witness had already testified. The records were clearly admissible. See Silverfarb v. United States, D.C.Mun.App., 40 A.2d 82, affirmed 80 U.S. App.D.C. 158, 151 F.2d 11.

■ Lastly, we are asked to rule that "the court erred in submitting to a jury, the members of which had been present in court since 9 a. m., the case at 6:03 p. m." At a bench conference counsel requested, "on the basis of the hour of the day," that the court continue the case to another day for argument and submission to the jury. The record does not indicate at what hour this request was made, but states that it was denied, "and after argument and instructions, the case was given to the jury at 6:03 p. m." and that the jury returned its verdict at 7:12 p. m.

Some years ago we had occasion to consider a case which had been submitted to a jury after 8 p. m. and with no recess for dinner. We commented that, "tired and hungry jurors are not apt to bring clear or patient minds to the consideration of their verdict," but we ruled that the matter was in the field of discretion and that there was no abuse of such discretion in the action taken. Shapiro v. Vautier, D.C.Mun. App., 36 A.2d 349, 351. Later, in Reynolds v. Korman, D.C.Mun.App., 96 A.2d 362, 365, an administrative case, we said: "We should be slow to attach blame to an examiner willing to expedite a case by sitting late into the night, for such an attitude tends to still complaints about the law's delays. On the other hand no hearing should be so protracted and intensive as to detract from the calm and patient approach which should attend all judicial and quasi-judicial hearings. Sound discretion will usually suggest the course to be followed." Those views apply in this case. We cannot say that the cause of justice was not served by completing the case that day, rather than bringing back jury, parties and counsel for a short session the next day. The jury took more than an hour to decide the case and there is no reason to believe that they were harassed or coerced or that fatigue or hunger led them to an ill-considered verdict.

Affirmed.