(No. 34661.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS IZZO, Plaintiff in Error.

*Opinion filed June 20, 1958.*

GEORGE CRANE, and EDWARD M. DEVINE, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN. S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, JOHN J. STAMOS, and ROBERT J. COONEY, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Thomas Izzo, was indicted in the criminal court of Cook County for the murder of Charles Knierim. A jury found him guilty and fixed his punishment at 99 years' imprisonment in the penitentiary. Judgment was entered on the verdict, and he prosecutes this writ of error.

Defendant's first contention is that his challenge to the array of jurors should have been sustained. When the jurors who were selected for service assembled in the jury room of the Criminal Court Building, Hon. Harold P. O'Connell, one of the judges of the criminal court, addressed them. The defendant contends that the prospective jurors were prejudiced by certain observations made by the judge, and that our decision in *People* v. *Schoos,* 399 Ill. 527, requires a reversal.

In his remarks to the jurors Judge O'Connell outlined their duties and responsibilities, and spoke generally about matters they were likely to encounter during their term of service. He emphasized the importance of trial by jury, and urged the jurors to look upon their service as the performance of a civic duty. He pointed out that the judges are the judges of the law, and the jurors the judges of the facts, including the credibility of the witnesses and the weight to be given to their testimony. He explained that although every defendant accused of a crime has a right to be tried by a jury, he also has a right to waive a trial by jury if he so desires, and to be tried by a judge. He described briefly the operation of peremptory challenges and challenges for cause, and indicated to the jurors the kind of cases with which they would probably be concerned.

The jurors were told that they would hear a great deal from lawyers to the effect that "before you can find a defendant guilty you should be satisfied beyond a reasonable doubt of the guilt of the defendant," and that the term "reasonable doubt" does not admit of precise definition. It was pointed out to them that the burden of proof was always upon the prosecution, that the defendant does not have to say anything, and does not have to take the stand. They were also told that at the conclusion of every trial the court would give them instructions as to the law applicable to the particular offense. The judge urged upon the jurors the importance of paying strict attention to the instructions

and of attempting to understand them. Sanity hearings were explained in considerable detail.

Because the jurors were told that a defendant in a criminal case has the right to be tried by a jury and also has the right to waive a trial by jury, it is now argued that it was thus indicated to the prospective jurors that a defendant who requested a jury trial was wasting their time. We think that the remarks of the judge do not reasonably admit of this construction.

Judge O'Connell's remarks were made extemporaneously. In explaining to the jury the operation of peremptory challenges and challenges for cause he inadvertently misstated the number of peremptory challenges to which defendants are entitled in certain cases, and in describing the type of cases that the jurors might expect to be concerned with he misstated the definition of a felony. Neither of these misstatements, however, could possibly have prejudiced the defendant.

During the discussion of reasonable doubt the following statement was made: "It is entirely up to you as jurors to be satisfied in your own mind, not absolutely or not conclusively, but beyond a reasonable doubt, that the defendant is guilty." The judge also pointed out to the jury the difficulty of defining the concept of reasonable doubt. Questions subsequently put to the jurors who tried the defendant upon their *voir dire* examination indicated that they were under no misapprehension because of these remarks. While the judge's statement may not have been technically correct, we do not see how it was harmful to the defendant.

While the comments related to the determination of the sanity of persons charged with crime, no issue of sanity was raised in the trial court and none is suggested here. Under these circumstances, those comments likewise could not have been harmful to the defendant, regardless of their accuracy.

In *Peoplle* v. *Schoos,* 399 Ill. 527, a judgment of conviction was set aside because a pamphlet described as a

"Jury Primer," prepared by one of the judges of the circuit court of Cook County, had been distributed to the prospective jurors. This court pointed out certain inaccuracies in the content of the pamphlet. It also emphasized the fact that it was prepared by a single judge, and commented upon the possibility that there might be as many different pamphlets as there were judges. In that case the trial judge had urged the jurors to study the pamphlet and had indicated that he might interrogate them as to its contents. In its opinion this court regarded the use there made of the pamphlet as an attempt to establish a new method of selecting jurors and to add new qualifications for them. Those functions it denominated as legislative and not judicial.

In the *Schoos case* the argument was also made that because jurors were not similarly "indoctrinated" at common law, use of the pamphlet violated the constitutional guaranty that "The right of trial by jury as heretofore enjoyed shall remain inviolate." (Art. II, sec. 5.) The court appears to have rejected this argument, saying: "It does not follow that a pamphlet in the nature of the jury primer used in this case cannot be prepared and employed under any circumstances." (399 Ill. at 536.) As we have elsewhere pointed out, "Under the constitution, there is room for adjustment of details so long as essentials are retained." (*Olson* v. *Chicago Transit Authority,* 1 Ill.2d 83, 86.) The use of the term "indoctrinated" instead of some less loaded word does not advance the argument. Common-law trial by jury by no means contemplated jurors that were free to act according to their own conceptions of their proper role.

The practice of the judges of the criminal court of Cook County, of having one of their members explain to the new jurors their duties and responsibilities, is not new. (See, *People* v. *Fisher,* 340 Ill. 216, 244 ff.) That practice is a response to a need that has been frequently expressed and frequently acted upon. To meet that need the Judicial Conference of the United States has authorized the pub-

lication of a "Handbook for Jurors" serving in the United State District Courts. Oral remarks to prospective jurors and statements in handbooks distributed to them, strikingly similar to the remarks here made, have been held proper. *Knight* v. *State,* 50 Ariz. 108, 69 P.2d 569; *People* v. *Lopez,* 32 Cal.2d 673, 197 P.2d 757; *People* v. *Cooney,* 23 Wash.2d 539, 161 P.2d 442. See, 63 Harv. L. Rev. 139; 38 J. Crim. L. & C. 620.

No litigant has a right, constitutional or otherwise, to have his case tried before ignorant jurors. To acquaint the juror with his duties and responsibilities in a new environment and to increase his understanding of the processes of a trial can hardly be objectionable in itself. There is no way of knowing what misconceptions might exist in the absence of an official explanation. Conscientious judges, however, have been sensitive to the possibility that a pamphlet designed for that purpose may contain misinformation or may minimize the effect of the actual instructions as to the applicable law that are given in the particular case by the trial judge. (See *People* v. *Schoos,* 399 Ill. 527; *United States* v. *Gordon,* (7 Cir.) 253 F.2d 177.) The possibility of misinformation can be reduced if not eliminated by careful preparation; and in any case the value of generally sound orientation in getting rid of antecedent misconceptions is so great as to outweigh any minimal inaccuracies that would be likely to occur.

We hold, therefore, that there was no prejudicial error in the remarks addressed to the jury in this case. To the extent that the views expressed in this opinion are in conflict with *People* v. *Schoos,* 399 Ill. 527, that case is overruled. In view of what was there said, we think it appropriate to add that we feel that whatever risks may be involved are lessened by the use of a carefully prepared pamphlet distributed to the jurors. That method, we think, is to be preferred to the extemporaneous statement used in this case.

On June 6, 1956, at approximately 3:00 P.M., Charles Knierim was shot to death while working on a construction job at the Hillman's Cermak Shopping Plaza in Berwyn. John Kropacek testified that he and Knierim were examining blueprints when defendant approached with a revolver in his hand and said to Knierim: "I promised to get you. Here it is." and shot Knierim in the face. Knierim fell and defendant fired three shots into his head. There were a number of eyewitnesses to the homicide. One of them, Donald Weller, wrote on a piece of concrete the license number of the car in which the killer left the scene. At the trial Kropacek and three other eyewitnesses identified defendant as the man who shot Knierim. All of them had failed to identify him at a police department show-up on the night of the murder. They identified him the following day, after a conference with the State's Attorney. It is unnecessary to state the facts in greater detail, because defendant does not challenge the sufficiency of the evidence to sustain the verdict.

Defendant complains of the court's refusal to instruct the jury as to manslaughter and to give the jury forms of verdicts covering that offense. In homicide cases, where there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter, an instruction defining manslaughter should be given. (*People* v. *Harris*, 8 Ill.2d 431; *People* v. *Papas*, 381 Ill. 90; *People* v. *Pursley*, 302 Ill. 62; *People* v. *Bacon*, 293 Ill. 210.) Defendant apparently contends that certain evidence introduced by the People to the effect that he had had unfavorable experiences with the deceased in connection with certain contracts, and that on the day in question he had been drinking at various times from 9:00 A.M. until the time of the shooting, was sufficient to warrant a manslaughter instruction.

Defendant denied that he felt any antagonism toward the deceased, and he did not admit that he had been drink-

ing excessively on the day of the shooting. He is entitled, however, to the benefit of any defense disclosed by the entire evidence, even if the facts upon which that defense is based are inconsistent with his own testimony. (*People v. Scalisi*, 324 Ill. 131, 145.) We find, however, no evidence of intoxication, and there is no evidence of the kind of provocation that would reduce the quality of the offense. (*People v. Tanthorey*, 404 Ill. 520; *People v. Jones*, 384 Ill. 407, 413; *People v. Bartley*, 263 Ill. 69; *People v. Newman*, 360 Ill. 226, 232.) In our opinion the court did not err in refusing to instruct the jury with respect to manslaughter.

Defendant complains that he was prejudiced because the eyewitnesses who testified were allowed to state why they had not identified him to the police. The answers were to the effect that they were scared, and in some cases that they had to think of their wives and children. The defendant raises no question as to the right of the prosecution to bring out, on direct examination, the reason for the initial failure to identify the defendant. He concedes that the testimony was admissible, but he argues that the State's Attorney knew that the witnesses would give prejudicial answers. Nothing in the record indicates that the references to the families of the witnesses were anticipated by the prosecution, nor are we satisfied that those references were inadmissible. One of these witnesses testified that he did not identify the defendant to the police because, "I thought maybe the man would confess and I could get out of it." The answer was stricken. We think that it did not require the trial judge to declare a mistrial.

Defendant also contends that the trial court unduly limited his cross-examination of two police officers, Leonard Peterson and Frank J. Hajek. Their testimony on direct related only to the description of the car in which the defendant drove up to his home on the evening of June 6, at which time the officers arrested him. The trial court ap-

plied the rule that cross-examination can not exceed the scope of direct, (*People* v. *Van Dyke*, 414 Ill. 251, 255,) and sustained objections to questions relating to the show-up, the coroner's inquest and other activities of the officers in connection with the case. While we have also held that the latitude to be allowed in cross-examination rests largely in the discretion of the trial court, (*People* v. *Provo*, 409 Ill. 63, 69,) we see no abuse of that discretion in the circumstances upon which defendant relies.

On his direct examination, defendant testified to various business dealings with the deceased which related to certain construction work being done at the Hillman's Cermak Shopping Plaza. Those dealings culminated in an action brought by the defendant against the deceased. There had been a hearing in that case before a master in chancery the day before the killing occurred. On direct the defendant testified that the case was proceeding favorably for him. He testified that he and one Clarence Beam, now deceased, had entered into the original contract for the masonry work at the shopping center. He told of the problem encountered in financing the project, which led to the formation of a corporation with Knierim who was apparently able to finance the undertaking. At the master's hearing, defendant had testified, upon cross-examination and without objection, that he was relying upon an anticipated legacy of $50,000 to enable him to perform the contract. He also had there testified on cross-examination that his name was not on the new contract,—testimony that differed from his testimony on direct examination in the present case.

Defendant now insists that the cross-examination of the prosecution with reference to the master's hearing was improper. We have carefully examined the cross-examination objected to, and are of the opinion that it did not exceed permissible bounds. (*People* v. *Provo*, 409 Ill. 63, 69; *People* v. *Matthews*, 359 Ill. 171.) Two incidents merit mention in this connection. Defendant testified that the

murdered man, Knierim, did not pay him any salary. When shown Knierim's check for $54.88 payable to him, defendant said that it was in payment for two days' work in September of 1955; that Knierim paid him "because I broke my leg, so I can get compensation and he had to show me on the payroll." The assistant State's Attorney inquired, "You are going to defraud the insurance company now. Is that right?" This question was improper, and an objection to it was sustained. It added but little, however, to the obvious inference from defendant's own remark. At another point, defendant was asked whether he had been drinking at the time when he fell off the scaffold. This question was also improper, and an objection to it was sustained. It should not have been asked, but we can not say that it was so prejudicial as to require a new trial.

Defendant objects to certain comments made by the assistant State's Attorney, in argument, with respect to the failure of defendant to call Clyde Cutler as a defense witness. Defendant maintains that it was the duty of the prosecution to call all eyewitnesses to the crime and that Cutler was one of them. *Carle* v. *People,* 200 Ill. 494, cited by defendant, does not support his contention. There this court said: "Where the State's attorney knows that a witness was present at the scene of the killing, but for some reason, either because he has no confidence in the witness, or for any other reason, he may doubt his veracity or integrity, he is not obliged to call such witness. * * * The State's attorney is invested with a certain discretion in the matter of calling witnesses for the State."

The remarks of the assistant State's Attorney in his closing argument were clearly invited by defendant. (See: *People* v. *Wheeler,* 5 Ill.2d 474, 485.) Defendant's attorney stated: "Ladies and gentlemen, where is Clyde Cutler? Did you see him? Did you hear him? Come on, McGloon, [one of the assistant State's Attorneys] get up on your feet and tell this Court where Clyde Cutler is and why you

didn't bother to produce him * * *." These remarks were followed by a characterization of an assistant State's Attorney as a "so-called fairminded prosecutor" and by personal aspersions on the State's Attorney himself. To the foregoing, the assistant replied, "They have the same right to *subpoenae* as we do."

In another instance, the assistant State's Attorney objected to cross-examination of a prosecution witness as to how long he had stayed in conference with the State's Attorney after his original failure to identify the defendant, "unless he is entitled to say what was said in there; the jury is entitled to know." Defendant was obviously preparing to use the conference with the State's Attorney to his advantage. The prosecutor's objection was properly overruled. It does not follow that the quoted remark in support of the objection was prejudicial. Nor does it appear that the prosecutor's argument to the jury with reference to what occurred in the State's Attorney's office was prejudicial to defendant. In his argument to the jury, defendant's counsel said, among other things, "You can well imagine what happened in that office on the second floor." He went on to state that the prosecution did not dare to produce the State's Attorney so that he might be cross-examined. This understatement of the argument of defendant's counsel suffices to show that the prosecutor's reply, "There is no evidence from that witness stand, because under the law they are entitled to object, if they want, to anything that happens outside the presence of the defendant, and they did," was invited by defendant. Whether or not the reply stated correctly the applicable rule of evidence, it was clearly invited, and no point is made as to the correctness of the legal proposition that it stated.

Defendant claims that the court erred in refusing certain instructions that he tendered and in giving others tendered by the prosecution. Defendant's refused instructions Nos. 3, 4, 5, 10, 14, 15 and 16 all state, in slightly

differing language, the law on the burden of proof. The points covered were fairly and adequately covered in defendant's given instructions Nos. 2, 5, 8, and 9. Considered as a whole, the 26 instructions given, 15 for the People and 11 for defendant, fairly and adequately presented the applicable law to the jury. We have carefully considered all the rulings on instructions, and we are of the opinion that the trial court did not err. See *People* v. *Banks,* 7 Ill.2d 119, 129.

Defendant contends that he was deprived of his constitutional right to be present at all of the proceedings when the trial judge heard discussion by counsel in chambers with respect to a certain line of questioning by the prosecution. Upon cross-examination, an assistant State's Attorney asked defendant whether one Donat had a claim for $200 against him. Defendant's counsel objected to the question as irrelevant and beyond the scope of the direct examination. The assistant State's Attorney offered to give his reasons for believing that the question was material but asked to do so outside the presence of defendant, who was then testifying. The trial judge, over objection, adjourned the discussion to his chambers. Thereafter, this line of questioning was permitted to continue without any final ruling upon the original objections.

Although we have said that a defendant "has a right to a public trial, by a jury if he chooses, at every stage of which he has the right to be present and in every part of which he has a right to participate for his own protection" (*People* v. *Kirilenko,* 1 Ill.2d 90, 98,) it does not follow that he has a right to hear what questions the prosecution intends to ask him while he is on the stand. Cf. *People* v. *Hirschberg,* 410 Ill. 165, 168.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*