STATE OF MARYLAND *v.* JOHN TUMMINELLO

[App. No. 99, September Term, 1972.]

*Decided December 28, 1972.*

Before ORTH, C. J., and THOMPSON and POWERS, JJ.

*Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *John N. Prevas,*

*Assistant State's Attorney for Baltimore City,* for applicant.

*Howard L. Cardin* for respondent.

THOMPSON, J., delivered the opinion of the Court.

The State has applied for leave to appeal from an order of the Criminal Court of Baltimore granting relief under the Uniform Post Conviction Procedure Act and directing a new trial for John Tumminello who was convicted of obtaining money under false pretenses. His first conviction was reversed by this Court in *Tumminello v. State,* 7 Md. App. 380, 256 A. 2d 342 but he was reconvicted on December 12, 1969. We affirmed his second conviction in *Tumminello v. State,* 10 Md. App. 612, 272 A. 2d 77, certiorari was denied by the Court of Appeals of Maryland on April 5, 1971 and by the Supreme Court of the United States, 404 U. S. 948, 92 S. Ct. 276, 30 L.Ed.2d 264 (1971).

According to the memoranda filed by the State and by Tumminello's counsel, the only issues presented for our decision are: (1) was Tumminello deprived of his absolute right to be present at various stages of his trial; and (2) if he did not have an absolute right to be present on the occasions described hereinafter, did he suffer prejudice by not being present during certain bench and chambers conferences.

The facts are fully set out in the prior opinions of this Court. In essence they are that John Tumminello, a bail bondsman, having heard that it was the intention of a trial judge to suspend a sentence previously imposed on Robert A. Sewell, contacted Sewell and told him that he would be able to get him released from prison if Sewell could raise some money to pay the judge and the State's Attorney. Sewell directed him to see a Father Maloney who was holding some money for him. From this source Tumminello obtained $600; he thereafter obtained other sums. After Sewell's release Tumminello

kept demanding more money. Sewell complained to the State's Attorney who procured a warrant authorizing the use of an electronic eavesdropping device; police officers recorded portions of a conversation between Tumminello and Sewell during which an additional $100 in marked bills was paid to Tumminello. The police officers immediately arrested Tumminello and recovered the marked money. The State's Attorney and the trial judge had no knowledge of Tumminello's activities at the time Sewell's sentence was suspended.

The post conviction hearing judge found that Tumminello was deprived of the right to be present at several stages of his trial. He additionally found that the absences actually prejudiced Tumminello's case and thus deprived him of due process of law.

The federal Constitution contains no express guaranty that an accused has a right to be present at his trial except when testimony is being taken; i.e. the Sixth Amendment right to be confronted with the witnesses against him, which is made applicable to State prosecutions by the due process clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965), *Illinois v. Allen,* 397 U. S. 337, 90 S. Ct. 1057, 25 L.Ed.2d 353 (1970). It has been held that the Sixth Amendment of the United States Constitution applicable to state prosecutions through the due process clause of the Fourteenth Amendment requires the presence of the accused at other stages of his trial if there is a reasonable possibility of prejudice because of his absence. *Snyder v. Massachusetts,* 291 U. S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934). See annotations to *Illinois v. Allen, supra,* 25 L.Ed.2d 931.

We shall consider first and at length, the hearing judge's finding of actual prejudice because of Tumminello's absence from a pretrial chambers conference and several recorded bench conferences.[1]

1. The hearing judge quite properly held that unrecorded bench conferences, where there was nothing in the trial transcript or in the post conviction hearing to show what occurred thereat, would not be presumed to be stages of the trial nor prejudicial.

On the morning of the trial, counsel and the trial judge conferred in chambers; the conference was recorded; Tumminello was not present. At that conference the Assistant State's Attorney informed those present that the victim, Sewell, was mentally incapable of testifying and that he intended to offer a transcript of his testimony at the prior trial.[2] Defense counsel, Douglas N. Sharretts, informed those present that it was his intention to object to the introduction of the transcription of Sewell's prior testimony on the bases: (1) that the state could not show that he was legally unavailable for trial; (2) that the witness, Sewell, was mentally incompetent to testify at the prior trial; and (3) that he intended to move to suppress the tape recording because Sewell was mentally incompetent at the time he executed the affidavit in support of the warrant under which the recording was made. The Assistant State's Attorney then informed those present that if the court should rule that Sewell's prior testimony could not be used, he intended to move to amend the indictment as to the amount of money that was obtained by reason of the false pretenses. Defense counsel indicated he would object to the amendment. The Assistant State's Attorney explained that without Sewell's testimony he would not be able to prove that the amount of money obtained was $2300 as alleged in the indictment, but that other evidence could establish a lesser sum was obtained by false pretenses and for that reason he would like to have the indictment amended as to the amount.

Defense counsel made reference to a "hassle" in the prior proceedings as to the bill of particulars insofar as it related to the amount of money Tumminello received from Sewell. There was further discussion as to the mental competency of Sewell during which defense counsel stated he felt it was the obligation of a trial judge

2. At the post conviction hearing Tumminello testified that he was present at one conference with counsel and the trial judge a few days before the trial at which time they discussed the possibility that Sewell, the victim, would be unable to appear at the trial.

to notice mental incompetency of a witness whenever it came to his attention and he thought the trial judge should notice it during the pre-trial conference. All present agreed that the question as to whether or not Sewell's testimony would be received was an important issue in the case.

Immediately after the conclusion of this conference the case was called for trial. In Tumminello's presence, defense counsel made reference to the fact that both court and counsel were familiar with certain preliminary motions he desired to make before the case was called for trial. He then moved that Robert A. Sewell be excluded as a state's witness on the grounds that he was not competent and he requested that the motion be heard prior to the time the jury was impaneled. The State agreed that the witness was presently incompetent but the trial judge insisted that testimony be produced both as to the witness's present competency and his competency at the time of the prior trial. Evidence on these questions was received for the remainder of the day.

When court resumed the next morning, the state indicated that it definitely would not call Sewell as a witness and probably would not use the transcript of his prior testimony. The court was requested to defer ruling on the question of the admissibility of Sewell's prior testimony. The state also moved to amend the indictment as to the amount of money received by reason of false pretenses from the sum of $2300 to $700. This motion was granted over objections of defense counsel.

The state informed the trial judge that the tape recording was of very poor quality and that a court reporter had prepared a transcript after repeatedly listening to the tape. He desired to give the jury a copy of that transcript while the tape was being played. Defense counsel indicated his intention to make a motion to suppress the tape on the basis that Sewell was incompetent at the time he made the warrant supporting affidavit. He alleged that Sewell's condition was known to the State's Attorney but was not made known to the

judge who issued the warrant authorizing the recording of the conversation. He also intended to move to suppress the marked bills which were transferred from Sewell to Tumminello during the recorded conversation. Defense counsel also objected to the tape on the ground that it was garbled and that it contained voices not properly identified as those of Sewell and Tumminello. He also objected to the transcript made by the court reporter.

After consideration of previously introduced evidence, the trial judge ruled that Sewell was presently incompetent and not available to testify at Tumminello's second trial, but that he had been competent during the prior trial and at the time he executed the affidavit in support of the search warrant. The judge said he would listen to the tape, read the transcript again, and then make a final decision as to whether or not the transcript should be presented to the jury. He expressed a feeling that, in general, a court reporter could interpret the tape for the benefit of the jury and a copy of his transcription could be read to the jury. After the court stated its tentative ruling, defense counsel stated that he thought it would be a waste of time for the court or the jury to hear the tape and provided his other objections were preserved, he would not object to having counsel or the court reporter read the transcript to the jury. Thereafter a jury was impaneled and the case proceeded. The record shows that Tumminello was present except at the initial conference prior to the calling of the case for trial and except at one or two unrecorded bench conferences during these proceedings.

Douglas Sharretts, trial counsel, testifying at the post conviction hearing, said that Mr. Tumminello never requested that he be advised as to what was going on at the bench or chambers conferences and that "I don't recall a single thing that was said and done in his trial that wasn't discussed [with Tumminello] at the recess of the court, or break of the jurors, or during the lunch hour, and for long hours after the trial each day. I think

we met constantly, talked and retalked, and discussed and re-discussed, argued and debated, and re-argued everything that was written down." That the only specific disagreement between him and Mr. Tumminello was as to how a priest was to be cross-examined. (This subject will be discussed hereinafter.)

The following occurred as Mr. Sharretts was being questioned by Tumminello's then counsel, Mr. Cardin:

"Q. And did he not also request of you that the jury hear the tape recordings themselves?

A. Now, Mr. Cardin, you are getting into a very difficult area. This was not something that was discussed just for a few minutes. It was discussed for days, if not weeks. The question of whether Mr. Tumminello wanted to sit through in the presence of the jury the playing of those tapes over, and over, and over, and over. He knew it was apparent from Mr. Aarons' document, it was apparent from Mr. Aarons' testimony, that the tapes would have to be played over repeatedly, repeatedly, repeatedly, to extract everything possible from the tapes. But with each playing of it those things which were as clear as crystal would be repeated over, and over, and over as well. And it was a question of evaluation at that time, which you'll understand that determined the decision between all of us that we would go on with it as long as the court had ruled it admissible, we would go on the written, typewritten summary rather than the live tape.

Q. Well, I'm trying to understand one part here. The court, having ruled the transcript admissible, wasn't there a request by Mr. Tumminello at that point that the tape be played for the jury at least once, so that they could understand the, for lack of a better word, difficulty that Mr. Aarons obviously went through in order to obtain the transcript, so that they

could test his reliability in putting down the words from the tapes?

A. No, Mr. Cardin.

Q. It was nothing like that?

A. No. There was a reason for it. If you want, I'll repeat it.

Q. These discussions that you alluded to was before the case was actually called for trial then, I take it, as far as what was going to happen with regard to the tapes?

A. It was a question of whether they would use the tapes, or use the transcript, and which position would we take if we had an election. And as the time of trial came along, it narrowed itself down to whether we insisted on the tapes, or whether the State would go on the transcription, the argument being that the tapes would be the best evidence rather than the transcription being the second, and we had a right to insist that the State use the best evidence if we wanted to. And the question was, did we want to insist that they use the live tapes under the best evidence rule. And we resolved that in the negative after full discussion.

Q. Now, you say 'we.' Do I take it then that Mr. Tumminello was a party?

A. Yes, of course, he was a party to it."

With reference to the pre-trial conference we have discussed, the post conviction judge found as follows:

"This conference dealt with integral decisions of the pending case based on facts, testimony and evidence relating to the prior case and was a stage of the trial. Mr. Sharretts, himself, expressed this feeling when he said, 'I say this pretrial conference comes within the definition of anytime in the proceedings.' [3] It is obvious

---

3. This statement was made in the context that the trial judge should notice the mental incompetency of the witness Sewell and preclude the admission of his testimony.

that the discussions held at that time were critical to the Petitioner's case and that many of the actions of defense counsel and also the Assistant State's Attorney taken during the trial were as a result of the understandings held by them based on what took place at that conference. These actions were therefore taking place without the knowledge or the reasoning of the Petitioner, due to the fact that he was not personally present at the conference. It is also a fact that the Petitioner was ready, willing and able to attend this conference at the time it was held."

As to this and other conferences which will be discussed hereinafter the post conviction judge concluded as follows:

". . . this Court recognizes the right of the Defendant to be present at all stages of his trial, including conferences between counsel and the trial Judge, both before and during the trial. Therefore, because Petitioner was unaware of many matters which could have had a bearing on the trial, had he known about them and was able to render assistance to his counsel concerning them, the outcome of his trial may have been different. This Court feels that there is only one way in which Petitioner can be assured of a fair trial in which his participation is knowledgeable and complete; that is, for a new trial to be ordered."

We think the post conviction hearing judge's statement of the law is too broad and his factual conclusions clearly erroneous.

After the conclusion of the pre-trial conference, each of the matters discussed were brought out in open court in the presence of Tumminello and in the absence of the jury. Tumminello could have readily expressed his objection, if he had any, and could have brought to the

attention of his counsel any matters of which he had knowledge that would have varied the actions taken by his counsel. The only thing which occurred at the pre-trial conference was a discussion of issues that could more properly be disposed of prior to the impaneling of the jury. We are unable to see how Tumminello's case was in any way prejudiced by his absence from the conference.

To further support his decision, the hearing judge stated:

> "The Court finds that the issue of the Petitioner's right to require the State to prove the chain of custody of the tape is a vital part of the case."

The law is clear that the proof of the chain of custody of physical evidence is of importance only to show the reasonable probability that there has been no tampering with the evidence. *Bailey v. State*, 16 Md. App. 83, 109, 294 A. 2d 123. There was no suggestion at either of the two trials or at the post conviction hearing that anyone had at any time tampered with the tape. Inasmuch as the tape itself was not played to the jury, even if it had been tampered with after the court reporter had made his transcription which was presented to the jury, it is obvious that Tumminello would have suffered no prejudice by reason of the tampering.

The bench conference to which the hearing judge indirectly refers occurred on the fourth day of the trial during the testimony of the court reporter as to how he had transcribed the tape; it was called when it appeared that the reporter had assigned identities to the taped voices on the basis of hearsay statements by one of the Assistant State's Attorneys. The trial judge stated that it was his intention to admit the transcript of the tape provided the court reporter not refer to any particular voice as that of Mr. Tumminello or that of Mr. Sewell, but that they be identified as voices number one and number two. During the course of the discussions

the court inquired of defense counsel as to whether he intended to raise the question of chain of custody of the tape to which defense counsel replied he had no intention of raising the technical question of chain of custody although he wished to preserve his other objections to the introduction of the tape and the transcript.

In view of the factual and legal status, we are unable to accept the hearing judge's conclusion that this was a vital part of the case or that Tumminello suffered any prejudice by reason of his absence from the bench conference. It appears that defense counsel saw that his objection on the technical grounds would accomplish nothing substantial for his client but would, on the contrary, require the state to produce tedious testimony which would in no way affect the outcome of the case.

The hearing judge further stated:

> "The Court finds that the Petitioner's right to require the presentation of live witnesses and the question of their being subjected to cross examination as opposed to stipulations is a major point in this case."

We have examined with care all that occurred at the recorded conferences. The only stipulation that would possibly support this finding was that concerning the technical chain of custody of the tape which we have already found not to be prejudicial.

The post conviction judge further found:

> "The Court finds that the issue of the Petitioner's right to be part of discussions as to the introduction of a transcript vis-a-vis the original wiretap case is of prime importance. It was agreed by both counsel in this case that the best evidence in the proceedings was the actual tape recording."

We have examined with care the recorded conferences and fail to find this discussion occurred at any of them. It occurred rather in open court while the court was

ruling on the pre-trial motions. After the court overruled the defendant's motion to suppress the tape and the transcript of it, defense counsel stated, "Then I would feel inclined to suggest to the court that it is a total waste of time to take up the court's time to hear the tape, for the jury to hear the tape." [4]

The Court announced its final finding of error in these words:

> "The Court finds that the Petitioner's right to be a part of the discussion as to the manner of cross examination of important witnesses due to the fact that he had already heard the testimony of these witnesses was of prime importance."

While Mr. Sharretts was cross-examining the priest, the State objected to defense counsel's lengthy review of his consistent testimony given at the prior trial. The State thought that defense counsel should have full opportunity to review inconsistent testimony but saw no point in going over the entire testimony. The court requested counsel to come to the bench and stated that he agreed with the State's position whereupon Mr. Sharretts said:

> "Your Honor, in the next two or three questions I am going to have to do something that is most distasteful to me, namely, ask Father Maloney didn't he testify under oath that the money that he got from Mr. Sewell was specifically for the purpose of bail and he so stated, and I hate to do it. I'm trying to lead up to it and give the Father half a chance to say that he just didn't recall and he overlooked it.
>
> "It is not pleasant for me to cross-examine a priest and show completely—almost if it were a layman you would suspect it's a perjured

---

4. Note trial counsel's post conviction testimony, quoted above. in which he stated Tumminello concurred in this decision.

answer which I certainly don't suggest, and you know that.

"I think Father Maloney has a memory failure and it's an embarrassing position for me, and I would ask that you be gentle with me as I am trying to be gentle with the priest."

Mr. Ozer: "I have no objection. Are we getting to it reasonably soon?"

Mr. Sharretts: "Yes, we are getting there."

(Whereupon the attorneys returned to their respective trial tables)."

We are unable to see how the presence of Tumminello at this conference could have been of any importance whatsoever let alone "prime" importance. Later when the defense was putting on its evidence the priest was recalled and the State objected to the defense's efforts to further impeach him. At a bench conference the court indicated that he would exercise his discretion and would permit the impeachment. A short time later counsel and the court discussed at a bench conference whether the prior testimony was admitted as substantive or impeaching evidence.

At the post conviction hearing, Mr. Sharretts, the defense counsel at the trial, was questioned with reference to this issue as follows:

Q. ". . . Was there any objection to your alleged refusal to cross-examine and diminish the effect of testimony of anyone?

A. "We had great discussions concerning Father Maloney. Father Maloney came into court, apparently convalescing from a long and severe illness. It was very apparent that Father was suffering from, if not total, very much impaired memory lack. I think if you'll read the transcript of the last two questions I asked Father Maloney, you will find wrapped up in the form of that question the sum total of the differences that Mr. Tumminello and I had con-

cerning the method of handling his testimony. The Father had testified in direct opposition to things that he had testified to in the first trial. I attributed it to an illness on his part, and I refused to submit to any other construction than the fact that the priest was ill. There was a difference of opinion as to the extent to which I should attack him on cross-examination. I used my judgment and questioned him in the manner that I thought was decent, respectful, and appropriate."

We are unable to accept the findings of the hearing judge with reference to the importance of Tumminello's presence at the bench conferences involved. We are unable to see any possible prejudice his absence therefrom could cause. It is true he and his counsel disagreed as to how to handle the delicate question of the method to use in cross-examining an ailing priest, but this issue was not and could not have been resolved by the trial judge. It was a clear situation where the trial counsel had to use his best judgment. It has often been said that errors in trial tactics, (we do not suggest that counsel's tactics were erroneous) are not grounds for post conviction relief. See for example *Booth v. Warden,* 3 Md. App. 480, 240 A. 2d 352.

After having examined the record and found no reasonable possibility of prejudice because of Tumminello's absence from one chambers conference or from any of the bench conferences, we now turn to the question of any technical violation of his legal rights. The right of one accused of crime to be present at every stage of his trial is embodied in Article 5 of the Declaration of Rights in the Constitution of Maryland and is spelled out in detail in Md. Rule 775 [5] and is a right affirmed in all Mary-

5. "The accused shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided in this Rule. The accused shall have the right to be present at the taking of a deposition taken at the instance of the

land cases hereinafter cited. If the right is violated, prejudice will be presumed. *State v. Saul*, 258 Md. 100, 265 A. 2d 178. The question now before us in the instant case, however, is whether any of the above described conferences constitute a "stage of the trial." We think not.

In *Brown v. State*, 225 Md. 349, 170 A. 2d 300, cert. den. 372 U. S. 960, 83 S. Ct. 1017, 10 L.Ed.2d 13 (1963), the Court of Appeals held that an accused had no right to be present while counsel argued proposed instructions to the judge in chambers during recess and out of the presence of the accused. In *State v. Saul, supra,* at 104, the Court of Appeals cited with approval our statement in *Saul v. State*, 6 Md. App. 540, 252 A. 2d 282, that a conference of the court with counsel concerning the delivery of a copy of a statute in response to the jury's request was not a part of the trial even though the actual delivery thereof did constitute a part of the trial. The hearing judge attempted to distinguish these authorities on the basis that the court was discussing questions of law as opposed to questions of fact. It will be observed in the instant case, that all but one of the discussions out of the presence of the accused concerned the admissibility of evidence. Although the discussion of admissibility of evidence necessarily involved some factual discussions, the essential questions considered in each instance were legal. The admission of evidence is a legal question as much as is the discussion of the instructions to be given. In both instances there might well be discussions of facts in order to consider either the proper instructions to give or the proper ruling to make on the evidence, indeed, it is difficult to conceive

prosecution. In a prosecution for an offense not punishable by death the defendant's voluntary absence after the trial has commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. The defendant's presence is not required at a reduction of sentence under Rule 764 (Revisory Power of Court), fixing of the date of execution in a capital case, or at a proceeding in an appellate court."

that either issue could be discussed in a vacuum without some reference to the facts of the particular case involved. The distinction drawn by the hearing judge is untenable.

We hold that the conferences in this case between counsel and the trial judge on the admissibility of evidence were not a part of the trial. This ruling was foreshadowed by *Martin v. State,* 228 Md. 311, 179 A. 2d 865, wherein the Court held that an argument on the motion for a directed verdict was not a stage of the trial. In that case the Court cited *Harris v. Commonwealth of Kentucky,* 285 S.W.2d 489, stating that the Court had held that an accused need not be present while court and counsel argued "the admissibility of evidence and a motion for directed verdict." See also *Veney v. Warden,* 259 Md. 437, 271 A. 2d 133. Our ruling is supported by cases throughout the country, both state and federal. *Johnson v. United States,* 318 U. S. 189, 63 S. Ct. 549, 87 L. Ed. 704, (1943). Mr. Justice Douglas speaking for a unanimous Court, held that a bench conference on the propriety of a cross-examination violated no right of an accused. *United States v. Lewis,* 420 F. 2d 686, (5th Cir.) ; *Peterson v. United States,* 411 F. 2d 1074, (8th Cir.) ; *Stein v. United States,* 313 F. 2d 518, (9th Cir.), cert. den. 373 U. S. 918, 83 S. Ct. 1307, 10 L.Ed.2d 417; *Cox v. United States,* 309 F. 2d 614, (8th Cir.) ; *People v. Izzo,* 14 Ill. 2d 203, 151 N.E.2d 329, 89 A.L.R.2d 187, cert. den. and appeal dismissed 362 U. S. 403, 80 S. Ct. 812, 4 L.Ed.2d 864: *Ramer v. State,* 40 Wis. 2d 79, 161 N.W.2d 209, cert. den. 394 U. S. 989, 89 S. Ct. 1476, 22 L.Ed.2d 764; *State v. Clark,* 49 Wis. 2d 161, 181 N.W.2d 355. Other cases are collected in 85 A.L.R.2d 1111, 1115.

A part of the pre-trial conference in the instant case concerned possible amendment of the indictment. The particular discussion arose out of the discussions of admissibility of evidence and to our mind is no more a stage of the trial than was the discussion of the evidence. We have found only one case directly in point, *State v. Beatly,* 45 Kan. 492, 25 P. 889, which found no error

438

where an indictment was actually amended at a pre-trial conference which the accused did not attend.

*Application granted.*
*Order reversed.*
*Tumminello to pay costs.*